GEORGE W. MITCHELL *vs.* FRANCIS SEIPEL.

*What is not an Easement by Implied Reservation, or of Necessity—Reciprocal Easements—Evidence.*

S. and M. owned adjoining houses on West street, in Baltimore City, with rear lots extending back to Gould lane. These two houses were built in 1839, by the owner of the whole of the vacent lot, the first house (the one now owned by S.) having a front of fifteen feet, and the second (the one now owned by M.) having a front in the lower story of twelve feet and a half, and in the upper stories of fifteen feet, thus leaving an alley of two feet and a half between them, covered by the joists which supported the second floor of the second house; these joists projected over the alley and into the adjoining wall of the first house. The alley thus covered was open to the street and extended back between the houses about thirty feet. At its inner *terminus* two gates were placed which opened respectively into the rear premises and yards of each house, and it was used by the occupants of each as a common passage-way, to and from the street. Each house had a front door opening upon the street, and from the end of the alley, a fence was built which extended back to Gould lane, and divided the lot into two parts, giving to each a width of fifteen feet, with access into each yard from the lane. The drainage and sewerage from each lot were carried off to the lane. The owner of this property and his widow were owners successively till 1865, when the entire property was sold under order of the Orphans' Court to W., who in the same year sold the second house and lot to C., from whom M., through *mesne* conveyances derived title, in 1874. This conveyance to C. was an absolute and unqualified grant describing the property by metes and bounds, which included the whole of the alley, and contained no reservation of the right to use the same for the benefit of the house and lot retained by W. W. retained ownership of the first house and lot until 1868; when he sold and conveyed the same to S. by a similar grant, which embraced no part of the alley. In 1878, M. prevented S. from using the alley by placing upon it buildings and other obstructions. In an action by S. against M., to recover damages for closing and obstructing the alley, it was HELD:

Mitchell *vs.* Seipel.

1st. That S. could not recover, as the law did not attach to the unqualified grant from W. to C., of the second house and lot, an implied reservation of the use of the alley, for the house and premises retained by W.; and that the alley was not a way of necessity.

2nd. That S., who after 1872 had built a stable on the rear of his lot, whereby his access from Gould Lane was obstructed, could not by this act of his own, without consent and against the rights of M., convert the alley from a way of convenience, to a way of necessity; and that whether, it was a way of necessity, depended on the state of things at the date of the deed from W. to C.

3rd. That the fact, that the part of the house granted by the deed from W. to C., which was above the alley, was supported by the wall of the house retained by W., did not make a case of reciprocal easements.

4th. That an agreement under seal between W. and C., which professed to grant the common use of the alley, but which was never recorded, and was not embodied in or referred to by the deed of the same date from W. to C., could have no effect in determining the construction or operation of that deed, nor could it in any way affect the rights of S. and W.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

*Exception.*—At the trial the defendant offered the following prayers:

1. That the Court exclude from the consideration of the jury the paper-writing offered in evidence by the plaintiff, purporting to be an agreement between George W. Chandler and George T. Waters, dated 8th June, 1865.

2. That the Court exclude from the consideration of the jury, that portion of the evidence of Francis Seipel, the plaintiff, wherein said Seipel stated that he received the agreement offered in evidence by the plaintiff from George W. Chandler to George T. Waters, dated 8th June, 1865, and that said Seipel received said paper at the same time he received the original assignment from George W. Chandler to George T. Waters, dated 8th June, 1865, offered in evidence by the plaintiff.

Mitchell *vs.* Seipel.

3. That there is no evidence in this case to show that the plaintiff had the right and privilege of using the alley mentioned in the plaintiff's declaration, at the time of the impetration of the original writ in this case.

4. That there is no evidence in this case to prove that George T. Waters granted or assigned to the plaintiff, the right and privilege of using the alley mentioned in the plaintiff's declaration.

5. That there is no evidence in this case from which the jury may presume a grant of the right and privilege to the plaintiff, to use the alley mentioned in the plaintiff's declaration.

6. That if the jury shall find from the evidence in this case, that Alexander Gould, by a lease for ninety-nine years, renewable forever, dated 23rd September, 1839, and recorded among the Land Records of Baltimore City, in Liber T. K., No. 292, folio 368, &c., demised and leased to Daniel Collins, all that lot or parcel of ground situate and lying in the City of Baltimore, and described as follows, that is to say: "Beginning for the same at the distance of sixty feet from the north-west corner of West street and Elizabeth lane, and at the south-west corner of a lot of ground theretofore leased and demised by the said Alexander Gould to George Hitzelberger, and running thence westerly and binding on the north side of West street thirty feet; thence northerly and parallel with Elizabeth lane, eighty feet to Gould lane, twenty feet wide; thence running easterly and binding on Gould lane thirty feet, to said George Hitzelberger's lot; and running thence south and bounding on said Hitzelberger's lot eighty feet, to the place of beginning."   And if the jury shall further find from the evidence, that said Daniel Collins departed this life between 19th April and 7th May, in 1844, and left a last will and testament, dated 19th April, 1844, and admitted to probate on 7th May, 1844, and that said last will and testament of said Daniel Collins is recorded in

the office of the Register of Wills for the city aforesaid, and that said Daniel Collins died possessed of said lot or parcel of ground, and that said Daniel Collins, by his last will and testament, declared it to be his wish and desire that. his wife Catharine should retain possession of the property or lot of ground herein above described, for the purpose of raising and educating the children of said Daniel Collins and his said wife Catharine; and if it should become necessary for the purpose aforesaid, said testator wished one of the said houses to be sold and applied as aforesaid, and his wife to have her one-third, and the balance to be used as aforesaid, viz., to raise and educate the said children of said Daniel Collins and his said wife Catharine. And if the jury shall further find that said Daniel Collins, by his said last will and testament, did will and desire that all the remaining property, after raising and educating his said children, and after deducting his wife's thirds, should be divided, share and share alike, among his five children, when they arrived at age; and that said Daniel Collins departed this life, leaving a widow, Catharine, and five children of said Daniel Collins, him surviving; and shall further find that said Daniel Collins, by his said last will and testament, appointed William Reese and George W. Chandler, as executors of said last will and testament, and that said Reese, on 7th. May, 1844, renounced all right, title or claim that he had by virtue of said appointment; and that letters testamentary were, by the Orphans' Court of Baltimore City aforesaid, granted to said Chandler, upon the estate of said Daniel Collins, and that the Orphans' Court of Baltimore City passed an order on 24th May, 1865, authorizing and empowering said Chandler, as executor as aforesaid, to sell at public sale property hereinbefore described, fronting thirty feet on the north side of West street, and that said Chandler, as executor as aforesaid, and by virtue of said order, did sell said property on the north side of

West street, at public auction, to George T. Waters, and that said sale was reported to said Orphans' Court, and was by said Court approved; and that the said Chandler, as executor aforesaid, made, executed and delivered unto said Waters, the assignment offered in evidence by the plaintiff, and dated 8th June, 1865, of and for said lot of ground fronting thirty feet on the north side of West street. And if the jury shall further find, that said Waters did make, execute and deliver unto said George W. Chandler, the sub-lease offered in evidence by the plaintiff, from said Waters to said Chandler, dated 8th June, 1865, for the lot fronting fifteen feet on north side of West street, then the plaintiff is not entitled to recover, and their verdict must be for the defendant.

7. If the jury shall believe from the evidence in this case, that Daniel Collins, during his life-time, was possessed of the lot of ground fronting thirty feet on the north side of West street, and described in the assignment offered in evidence by the plaintiff, from George W. Chandler, as executor of said Collins, to a certain George T. Waters, and dated 8th June, 1865, and that said Chandler, as executor as aforesaid, executed and delivered said assignment to said Waters; and that the said Waters executed and delivered unto said Chandler, the sub-lease from said Waters to said Chandler, dated 8th June, 1865, offered in evidence by the plaintiff; and said Chandler made, executed, acknowledged and delivered unto Thebedeaux Chandler, the assignment from said Chandler to said Chandler, dated 10th December, 1868, and offered in evidence by the plaintiff; and that said Thebedeaux Chandler and William Edward Chandler, her husband, if the jury find the latter to be the husband of the former, did make, execute and deliver unto Elizabeth A. Kessler, the assignment dated 24th July, 1872, from said Thebedeaux Chandler and her said husband, to said Kessler, and offered in evidence by the plaintiff; and that said Kessler

and her husband, if the jury find the latter to be husband of the former, did make, execute and deliver unto the defendant, the assignment from said Kessler and her husband to the defendant, dated 13th October, 1874, and offered in evidence by the plaintiff, then the plaintiff is not entitled to recover, and their verdict must be for the defendant.

The Court, (BROWN, J.,) granted the defendant's first and second prayers, and rejected his third, fourth, fifth, sixth and seventh prayers, and gave the following instruction to the jury :

The Court instructs the jury, that if they find that Daniel Collins was lessee from Alexander Gould, of the lot mentioned in the evidence, situated on the north side of West street, in the City of Baltimore, and that said Collins built two houses on said lot about forty years ago, with an alley between them, running from West street to the rear of said houses, with one gate opening from said alley into the yard of one of said houses, and another gate opening from said alley into the yard of the other of said houses, and that said alley was made and designed by said Collins for the common use and benefit of both said houses, and was so used by the occupants of said houses so long as Collins continued to be the owner thereof, and ever since, until it was obstructed by the defendant in such manner that all beneficial use thereof by the plaintiff was prevented ; and if they further find that the plaintiff was in the possession of the westernmost of said houses under the deed of assignment to him, given in evidence, at the time when said alley was obstructed by the defendant, then the plaintiff is entitled to recover.

And the plaintiff offered the following prayer, which was granted by the Court :

That if the jury, upon the instruction given by the Court, find their verdict in favor of the plaintiff, they may award such damages as will compensate him for the

inconvenience he has sustained, if any, because of any interference by defendant with the reasonable use and enjoyment of said alley by the plaintiff, and they are also at liberty to consider the motives of defendant in so obstructing said alley, and if they find he acted wilfully and wrongfully in so doing, and with intent to injure the plaintiff, they may award the plaintiff such sum as will in their judgment punish the defendant for his wilful acts.

The defendant excepted, and the verdict and judgment for $500, being for the plaintiff, the defendant appealed.

The cause was argued before BARTOL, C. J., BRENT, GRASON, MILLER, ROBINSON and IRVING, J.

*Arthur W. Machen* and *R. J. Bouldin*, for the appellant.

From the prayers of the defendant which the Court rejected, and more particularly from the Court's own instruction, it is apparent that the Judge below, regarded this case as coming under the principle of *Janes vs. Jenkins*, 34 *Md.*, 1, and controlled by the authority of that decision. On behalf of the appellant, it is submitted that there is a very material difference between the two cases, and that upon the authority of the same line of cases upon which the decision in *Janes vs. Jenkins* proceeded, the judgment of the Court should, in this case, have been in favor of the defendant below.

*Janes vs. Jenkins* was a case where a house having been erected, windows of which opened upon vacant ground of the same fee simple owner, such owner sold and conveyed the ground on which the house stood, retaining the said vacant ground; and it was held that the enjoyment of light and air by the windows passed with the house, as appurtenant to it, and that neither the grantor, nor his assignee could obstruct them by building on such vacant

17                           v. 53.

Mitchell *vs.* Seipel.

ground. This doctrine was established as far back as *Palmer vs. Fletcher*, 1 *Lev.*, 122, has been confirmed by numerous decisions, and has never, to this day, been impugned or questioned in any English case. As stated in general terms, in 28 *W. R.*, 196, the rule is this: That on the grant by the owner of a tenement of part of that tenement as it is then used and enjoyed, there will pass to the grantee all those continuous and apparent easements, or *quasi* easements, or, in other words, all those easements which are necessary to the reasonable enjoyment of the property granted, and which have been, and are, at the time of the grant, used by the owners of the entirety for the benefit of the part granted. *Barnes vs. Loach*, 28 *Weekly Reporter*, (1879.)

Whether when the case is reversed, and the owner, instead of parting with the building, and keeping adjacent vacant land, conveys away the vacant ground, and himself retains the house, *he* is at liberty to insist on the easement which he did not take the pains to reserve in the deed he made, is a different question. The weight of authority in England is now clearly against extending to the grantor who retains the dominant tenement the benefit of an implied reservation of an easement upon land which he has conveyed without any reservation expressed. It has been considered that to concede to him such an easement would be opposed to the principle that a man cannot derogate from his own grant; whereas to allow to a *grantee* of the building the benefit of an existing, apparent and continuous easement is in strict accordance with this principle, inasmuch as it gives to the grantee with the thing granted that which is essential to its reasonable enjoyment. *Wheeldon vs. Burrows*, 28 *W. R.*, 196, in the Court of Appeal, (1879,) affirming decision of *Bacon, V. C.*, 17 *W. R.*, 165; *Ellis vs. Manchester Carriage Co., L. R.*, 2 *C. P. Div.*, 13; *White vs. Bass*, 7 *H. & N.*, 722, 731; *Tenant vs. Goldwin*, 2 *Ld. Raym.*, 1093.

Mitchell *vs.* Seipel.

Independently of the rule that the doctrine of the annexation of visible and continuous easements cannot be extended to the case where the interruption of the unity of ownership is occasioned by the conveyance of that part of the property which, if it had not been parted with, would have been servient to the other, it is fully settled that a way, unless it be a way of *necessity*, does not come under the class of easements to which the doctrine in question applies.    Even in the case of a severance of two tenements by the grant of the dominant tenement, the rule is that no right to use ways, which during the unity of possession have been used and enjoyed in fact, passes to the owner of the dissevered tenement, unless there be something in the conveyance to show an intention to create the right to use these ways *de novo.    Oliver vs. Hook,* 47 *Md.,* 301, 309; *Worthington vs. Gimson,* 2 *El. and El.,* 618; 6, *Jurist, N. S.,* 1053; *Dodd vs. Burchell,* 1 *H. and Colt,* 113, 118; *Polden vs. Bastard, L. R.,* 1 *Q. B.,* 156, in the Exchequer Chamber, affirming *S. C.,* 4 *Best & Smith,* 257; *Pheysey vs. Vicary,* 16 *M. & W.,* 484.

*Thomas R. Clendinen and George T. Beall, Jr.,* for the appellee.

Upon the severance of the heritage the right of each house to the use of the alley, and of the eastern house to the support of the wall of the western house, the same being incidents and privileges appurtenant to the entire estate and to each dwelling, became in effect easements or servitudes in favor of the one or the other respectively, and a benefit or burden upon the one or the other, as each was affected thereby, and this without any regard to the length of time the property has been held since the division.

All that portion of the alley embraced within the lines of appellant's deed was subject to the right to use the same for the purposes of an alley, and all that portion of

the ground embraced in appellee's deed, covered by the eastern wall of appellee's house, was subject to the right of appellant to have his house supported upon the wall erected, or at any future time to be erected thereon.

These were mutual, reciprocal obligations, originating in the arrangement and design of the original builder and lessee, were .well known to all parties, and were continuous and apparent; had been used as such by the owner during unity, and were necessary for the use of the tenements conveyed; and it is impossible to say that either the wall, the alley or the gate were not apparent; upon the severance of the heritage the vendor acquired and exercised an easement, from that moment strictly so, in reference to his alley, and the appellant bought, subject to his easement in favor of the appellee, the same being continuous, apparent, and in full use by the appellee, as he, the appellant, himself says.

There are many instances of the application of this doctrine, and among them the following: *McTavish vs. Carroll*, 7 *Md.*, 352; *Janes vs. Jenkins*, 34 *Md.*, 1; *Lampman vs. Milks*, 21 *N. Y.*, 505; *Phillips vs. Phillips*, 48 *Pa. St.*, 178; *Kieffer vs. Imhoff*, 26 *Pa. St.*, 438; *McCart vs. Kitchunman*, 47 *Pa. St.*, 239; *Morrison vs. King*, 62 *Ill.*, 30; *Hill vs. Miller*, 3 *Paige*, 254; *Durel vs. Boisblanc*, 1 *La. Ann.*, 407; *Underwood vs. Carney*, 1 *Cush.*, 290; *Kent vs. Wait*, 10 *Pick*, 138; *Pyer vs. Carter*, 1 *H. & N.*, 916; *Watts vs. Kilson*, *L. R.*, 6 *Mass.*, 166; *Davies vs. Sear*, *L. R.*, 7 *Eq.*, 427; *Hattemeier vs. Albro*, 18 *N. Y.*, 48; *McPherson vs. Acker*, 21 *Albany L. J.*, 52; *Pettingill vs. Porter*, 8 *Allen*, 1; *Richards vs. Rose*, 9 *Exch.*, 218; *Hull vs. Lund*, 1 *H. & C.*, 676; *Eno vs. Del-Vecchea*, 4 *Duer*, 53; *Same Case*, 6 *Duer*, 17; *Webster vs. Stevens*, 5 *Duer*, 553; *Kilgour vs. Ascham*, 5 *H. & J.*, 82, 83; *Burwell vs. Hobson*, 12 *Gratt.*, 322; *U. S. vs. Appleton*, 1 *Sumner*, 492; *Seymour vs. Lewis*, 2 *Beasley*, 439; *Siebert vs. Swann*, 8 *Barr.*, 383; *Carlin vs. Paul*, 11 *Mo.*, 32; *Fowler vs. Bigelow*, 10

Mitchell *vs.* Seipel.

*Mass. R.,* 388 ; *Washburne on Easements,* 57, 74, 75, 76, 78, 79, 80, 83, 91, 92, 95, 646, 647, 650, 651, *&c. ; Gale & Whalley on Easements,* 53, 82, *&c. ; Gale on Easements,* 89 to 93, *&c. ;* 2 *Washburne on Real Property,* 313, 314, *&c. ; Brakely vs. Sharp,* 2 *Stockton,* 206.

The appellant holds only a qualified interest in the property under an assignment of a sub-lease, and does not hold the fee. The appellee's title includes all the ground of the appellant, and is an assignment of the original lease, under which the houses and alley were constructed. This alley was a right appurtenant to the property, and always had been so. It belonged and appertained to it, and we claim that the right to its beneficial use, and as necessary for the reasonable and proper use of the premises, was vested in the appellee, as it was in his vendor, and had always been used in connection with the property. In a case like this it is proper for the Court to consider the needs and requirements of people dwelling in a crowded city as differing essentially and entirely from the condition of persons living in the country, who claim a right of way through another's field, uncertain and indistinct, and, from its nature, liable to change and variation from many causes—such as washing, storms &c. An alley such as this—paved, inclosed, arched over— requires for its construction as much design as the house itself, and equally as apparent and continuous as the house itself. It has been said that in some instances a way was not a continuous easement. This can readily be understood in some instances, viz., over a field where it might vary or be directed over an open space; but here the reason of that rule ceases ; here there is an enclosure, and every indication of permanency in design; and it must be borne in mind that to property of this character and of small size, and which are too narrow to have a passage, an alley is indispensably necessary for the reasonable and comfortable enjoyment of the house and yard ;

so that, on the ground of necessity, the appellee's claim ought to be sustained.

MILLER, J., delivered the opinion of the Court.

This action was brought in December, 1878, by the appellee against the appellant to recover damages for closing and obstructing an alley between two houses then separately owned by the respective parties. The case presents an important and interesting question respecting the law of easements.

The facts necessary to be stated, and about which there is no dispute are these: In the year 1839, Daniel Collins became the owner under a lease for ninety-nine years renewable forever of a lot ground in the City of Baltimore, fronting thirty feet on West street, and extending back eighty feet to Gould lane, a public alley twenty feet wide. The lot was then vacant, but soon after his purchase Collins erected thereon two brick houses fronting on West street. These houses were built about the same time, the first having a front of fifteen feet, and the second a front in the lower story of twelve feet and six inches, and in the upper stories of fifteen feet, thus leaving an alley of two feet and six inches between them, covered by the joists which supported the second floor of the second house. These joists projected over the alley and into the adjoining wall of the first house. The alley thus covered was open to the street, and extended back between the houses about thirty feet. At its inner *terminus* two gates were placed, which opened respectively into the rear premises and yards of each house, and it was used by the occupants of each as a common passage way to and from the street. Each house had, as usual, a front door opening upon the street, and from the end of the alley a fence was built which extended back to Gould lane, and divided the lot into two parts, giving to each a width of fifteen feet. During his life, Collins continued the owner of the whole

property and occupied one of the houses. After his death his widow became the owner under his will, and so continued until the year 1865, when by an order of the Orphans' Court, and in pursuance of a power contained in the will, the executor of Collins sold and conveyed the entire property to George T. Waters.

While the unity of possession thus continued, it is very clear no easement in respect to this alley existed. A party cannot have an easement in his own land, inasmuch as all the uses of an easement are fully comprehended in his general right of ownership. *Oliver vs. Hook,* 47 *Md.,* 308. But this unity of ownership was severed on the 8th of June, 1865, by Waters the owner, who on that day sold and conveyed the *second* house and lot to George W. Chandler, from whom the defendant through several *mesne* conveyances derived his title to the same. This conveyance was an absolute and unqualified grant, describing the property by metes and bounds, which *included the whole of this alley,* and contained *no reservation* of the right to use the same for the benefit of the house and lot retained by the grantor. Waters retained ownership of the *first* house and lot until the 29th of July, 1868, when he sold and conveyed the same to the plaintiff by a similar grant, which embraced no part of the alley. The defendant obtained his title to the second house and lot, (as before stated by *mesne* conveyances from Chandler, the first grantee thereof,) in October, 1874, and shortly before this suit was brought, prevented the plaintiff from using the alley, by placing upon it buildings and other obstructions. There is no pretence that the plaintiff had acquired a prescriptive right to use the alley, nor is the case complicated by any easements of drainage or sewerage. There are no pipes or drains, either underground or otherwise, from one house to the other, and thence to a common outlet, nor does the surface drainage pass through the alley. The proof shows that the natural flow of surface water,

and that from the hydrants on both premises is in the opposite direction, towards and to Gould lane. The alley was therefore simply a convenient passage way. Without doubt it was open and apparent, and was made and designed by Collins, for the common use and benefit of both houses, and was in fact so used by the occupants of both, until obstructed by the defendant, but it is equally clear that Collins and those who succeeded him in the ownership of both could have closed it, and re-arranged the premises at pleasure. The real question in the case then is: Does the law attach to the unqualified grant in 1865, from Waters to Chandler, of the second house and lot, by metes and bounds, which include the whole of this alley, an *implied reservation* of the use of it for the benefit of the house and premises retained by the grantor? Upon this point, our investigations have led us to an examination of the large number of authorities cited by counsel, as well as many others, and upon no question have we found so great a contrariety of judicial opinions and *dicta*, if not of actual decisions.

There is a general concurrence of authority, both in England and in this country in support of the proposition, that on the grant, by the owner of a tenement, of *part* of that tenement as it is then used and enjoyed, that will *pass to the grantee* all those easements which are necessary to the reasonable enjoyment of the property granted, and which have been, and are at the time of the grant used by the owner of the entirety for the benefit of the part granted, and so it was decided by this Court in *Janes vs. Jenkins,* 34 *Md.,* 1. But the question here is, whether upon such a grant, the law will engraft a *reservation of such easements* in favor of the part retained by the grantor. Upon this point, the authorities in England, until quite recently, have been conflicting. As early as the case of *Palmer vs. Fletcher,* 1 *Lev.,* 122, the question was mooted, but there was a difference of opinion among the Judges,

Mitchell *vs.* Seipel.

and it was not decided. The subsequent case of *Nicholas vs. Chamberlain*, 3 *Cro. Jac.*, 121, was decided upon demurrer, and in the report of it, the pleadings are not given. It has been often cited, and sometimes for the purpose of sustaining the position that in all cases of what are termed apparent and continuous easements, the doctrine of implied reservation stands upon exactly the same footing as the doctrine of implied grant, but in so far as it may be thought to sustain that position, we have the high authority of THESIGER, L. J., who delivered the judgment of the Court of Appeal in *Wheeldon vs. Burrows*, 12 *Ch. Div.*, 31, for the statement that it has again and again been overruled. If, however, in addition to the doctrine of implied grant, it merely decides that there may be an implied reservation of what are termed easements of necessity, then it is quite in accord with other English authorities.

In the later case of *Tenant vs. Goldwin*, 2 *Ld. Ray.*, 1089, so great a Judge as Lord HOLT, in delivering the judgment of the Court, refers to *Fletcher vs. Palmer*, and says: " If, indeed, the builder of the house sells the house, with the lights and appurtenances, he cannot build upon the remainder of the ground so near as to stop the lights of the house, and, as he cannot do it, so, neither, can his vendee. But if he had sold the vacant piece of ground and kept the house, *without reserving the benefit of the lights*, the vendee might build against the house. But in the other case where he sells the house, the vacant piece of ground is by that grant charged with the lights." Here the doctrine of implied reservation is plainly denied. In the first edition of *Gale on Easements*, the learned author sets out the doctrine of the French law to the effect that if the proprietor of two heritages between which there exists an apparent and continuous servitude, disposes of one of them without any stipulation in the contract respecting the servitude, it continues to exist, actively or

passively, in favor of the heritage alienated *or upon it.*
And with this he says the English law appears to agree,
and declares that the only opposition to this doctrine is
the opinion of Lord HOLT in *Tenant vs. Goldwin,* which he
pronounces a mere *dictum,* or, at most, an opinion founded
probably upon the civil law, whereas the doctrine of
the English law on this subject is probably of French
origin.   In the case of *Pyer vs. Carter,* 1 *Hurls. & Nor.,*
916, the Court of Exchequer adopted this statement of
*Mr. Gale,* and practically denied the existence in such
cases of any distinction between an implied grant and an
implied reservation with reference to such easements.
But this case soon gave rise to controversy.   It is sup-
posed to have been approved by the House of Lords in
*Ewart vs. Cochrane,* 9 *Jurist,* 925, but that case, which
was an appeal from the Court of Sessions in Scotland,
only involved the question whether that was an *implied*
*grant* of the easement.   The plaintiffs were the owners of
a tannery, and the defendant was the owner of the ad-
joining house and garden.   Both properties at one time
belonged to the same owner, and there was a drain carry-
ing off the surplus water from the tanyard into a cess-
pool in the adjoining garden, where it disappeared by
absorption.   The tannery was sold by the common owner
in 1819 to a party under whom the plaintiffs derived title,
and the defendant purchased the house and garden in 1853,
and then stopped up the drain.   The Court below decided
in favor of the plaintiffs, on the ground that there was an
implied grant of the easement by the conveyance of the
tannery in 1819.   In the House of Lords, the Chancellor,
(Lord CAMPBELL) said :   "The ground on which I proceed
is this—that this is a servitude which the grant implies.
I cannot entertain the slightest doubt upon that.   I mean
on the grant accompanied by the enjoyment which existed
at the time the grant was made."   He then cites *Pyer vs.*
*Carter,* as sustaining this position of an implied grant, as

Mitchell *vs.* Seipel.

the *opinion* of the Court of Exchequer undoubtedly does, and in *Janes vs. Jenkins* it was cited by this Court for the same purpose only. In neither of these cases did any other question than that of an implied grant arise. In the subsequent case of *White vs. Bass,* 7 *H. & N.,* 722, the Court of Exchequer itself decided in direct conflict with the *doctrine* of implied reservation it had previously announced in *Pyer vs. Carter.* That case may be stated thus: The owners in fee of a house and adjoining land in 1856 conveyed the *land* to the defendant, and in 1857 sold the house to the plaintiff, and it was held, al` the Judges concurring, that the plaintiff could maintain no action against the defendant for building on the land so as to obstruct the light and air which formerly came to the windows of his house. CHANNELL, B., quotes with entire approval the opinion of Lord HOLT in *Tenant vs. Goldwin,* and WILDE, B., says: "It is said that the owners who conveyed to the trustees the reversion in fee of the land, having at that time themselves the use of the neighboring house, is a circumstance from which it ought to be implied that, in granting fully and freely, as they did, the land, they meant to restrict the grantees in building upon it. No authority has been cited for that position. The only authority that at all approaches that view is the case of *Pinnington vs. Galland,* 9 *Exch.,* 1; but all that case decided is that the Court might, as matter of law, imply a reservation of *way* where it was a *way of necessity.* To this extent the law has gone—that where the owner of a close surrounded by his land grants the close to another without any express reservation of a way, if there is no other means of getting to the close, the law will imply a way over the grantor's land as incident to the grant. That is no authority for implying in this case a restriction upon the grantees of the land that they shall not build upon it so as to obstruct the light and air of the plaintiff's house."

Next is the case of *Suffield vs. Brown*, 4 *De G. I. S.*, 185, in which Lord Chancellor WESTBURY, in a very vigorous opinion, assails the doctrine of implied reservation announced by *Mr. Gale* and adopted in *Pyer vs. Carter*, and he holds, that to imply a grant or reservation of an easement as arising upon the disposition of one of two adjoining tenements by the owner of both, where the easement had no legal existence anterior to the unity of possession *and is not one of necessity*, is a theory in part not required by, and in other part inconsistent with the principles of English law which regulate the effect and operation of grants of real property; that if the grantor intends to reserve any right over the property granted, it is his duty to reserve it expressly in the grant, and the operation of a plain grant not pretended to be otherwise than in conformity with the contract between the parties ought not to be limited and cut down by the fiction of an implied reservation ; and that the grantor cannot derogate from his own absolute grant so as to claim rights over the thing granted, even if there were at the time of the grant, continuous and apparent easements enjoyed by an adjoining tenement which remains the property of the grantor. With respect to implied reservations in such cases, he says : " This is a very serious and alarming doctrine ; I believe it to be of very recent introduction ; and it is in my judgment unsupported by any reason or principle when applied to grants for valuable consideration." It is said, however, that the facts of this case did not require the announcement of such an opinion, and that *Pyer vs. Carter*, if overturned by *Suffield vs. Brown*, has been set up again by the decision in *Watts vs. Kelson, Law Rep.*, 6 *Ch. App.*, 166. It is true that in the course of the argument in that case expressions fell from several of the Judges approving of *Pyer vs. Carter*, but in the considered opinion of the Court delivered by MELLISH, L. J., we find no disapproval of *Suffield vs. Brown*, nor any approval of

the doctrine of implied reservation contained in *Pyer vs. Carter,* and besides the only question the Court had to decide in that case was what *passed by the grant.* After this Lord Chancellor CHEMLSFORD, who had participated in the decision of *Ewart vs. Cochrane,* expressed in the case of *Crossly & Sons vs. Lightowler,* (*Law. Rep.,* 2 *Ch. App.,* 478,) his entire approval of what was said by Lord WEST-BURY in *Suffield vs. Brown,* and concurred with him in refusing to accept *Pyer vs. Carter,* as an authority. Still later the Judges of the Common Pleas Division in *Ellis vs. Manchester Carriage Company,* (*Law Rep.,* 2 *C. P. Div.,* 13,) followed the case of *White vs. Bass,* and the decision of KINDERSLEY, V. C., in *Curriers' Company vs. Corbett,* 2 *Dr. & Sur.,* 355, and quote again with approval the opinion or *dictum* of Lord HOLT in *Tenant vs. Goldwin.*

Finally, in the recent case of *Wheeldon vs. Burrows,* (*Law Rep.,* 12 *Ch. Div.,* 31,) decided in June, 1879, the question again arose and was directly presented, the facts of the case being similar to those in *White vs. Bass.* The case was elaborately argued before Vice-Chancellor BACON, and in the Court of Appeal, before Lords Justices THESIGER, JAMES and BAGALLAY. In an able and extended opinion delivered by THESIGER, L. J., all the leading English decisions are reviewed, and as the result of this review two propositions are stated: *First,* that all these continuous or apparent easements, or in other words all these easements which are necessary to the reasonable enjoyment of the premises granted, and which have been and are at the time of the grant used by the owner of the entirety for the benefit of the part granted, *will pass to the grantee under the grant. Second,* that if the grantor intends to reserve any right over the tenement granted it is his duty to *reserve it expressly* in the grant, and to this the only exception is of *ways or easements of necessity.* Both these general rules are founded upon the maxim that "a grantor shall not *derogate* from his grant." This principle is

deeply embedded in the common law, and is universally applied by the Courts whenever they have occasion to construe or determine the effect of a grant. By these recent decisions the doctrine of an *implied reservation* in such cases of all such easements as are mentioned in the first proposition, is utterly repudiated, and the case of *Pyer vs. Carter* to that extent overruled as a break in the current of authority on this point.

Such is the present state of English authority upon this question, and the law in that country seems at last to be placed upon a reasonable and solid foundation. If there was an uniform current of decisions, or even if the decided weight of judicial authority in this country were to the contrary, we should not hesitate to follow it, but we do not find such to be the case. A large majority of the American decisions which we have examined, are cases falling directly under the first proposition above stated, and in them we find the doctrine of *Gale on Easements* and *Pyer vs. Carter*, not unfrequently cited. Others are cases of *simultaneous sales* of parts of the entire property, either privately, or at auction, or under decrees or judgments, and these are also brought within the first proposition. The law in such cases is clearly stated in *Swansborough vs. Coventry*, 9 *Bing.*, 305, where it is said by TINDAL, C. J: "It is well settled by the decided cases that where the same person possesses a house having the actual use and enjoyment of certain lights, and also possesses the adjoining land, and sells the house to another person, although the lights be new, he cannot, nor can any one who claims under him build upon the adjoining land, so as to obstruct or interrupt the enjoyment of those lights. This principle is laid down by TWISDEN and WYNDHAM, JJ. in *Palmer vs. Fletcher*, 1 *Lev.*, 122, that no man shall derogate from his own grant. The same law was adhered to in the case of *Cox vs. Matthews*, 1 *Ventr.*, 237, by Lord HOLT in *Rosewell vs. Pryor*, 6 *Mod.*, 116, and in

the later case of *Crompton vs. Richards*, 1 *Price*, 27. And
in the present case, the sales to the plaintiff and the
defendant being sales by the same vendor, *and taking
place at one and the same time,* we think the rights of
the parties are brought within the application of this
*general rule of law."* Others again are cases of devises
under wills or of partition among parceners or tenants in
common, under statutory provisions accompanied with
allotment of dower to the widow. In case of a will the
devisees of the several parts take at one and the same
time and under one and the same instrument, and hence
the law of simultaneous sales is strictly applicable. So also
in cases of partition, the parties take the several parts
allotted to them under the *same proceeding* to which their
separate titles are all referable, and thence is no priority
of date between them. *Brakely vs. Sharp*, 2 *Stock. Ch..
Rep.*, 209. Besides in such cases, as was said by this
Court in *Kilgour vs. Ashcom*, 5 *H. & J.*, 82, it is made
the duty of the commissioners dividing the estate to take
into consideration all the *advantages* and *disadvantages*
attending the several parts, to value the same accord-
ingly, and to make division and allotment upon the basis
of such consideration and valuation.

In short, after a careful examination of the numerous
authorities in this country to which our attention has been
called, we have found but one prominent decision by a Court
of last resort, in which the doctrine of implied reserva-
tion in a case analogous to the one before us has been sus-
tained, where the *facts* were such as fairly to present the
question for determination. That is the case of *Seibert
vs. Levan*, 8 *Barr.*, 383, in which the opinion of the Court
sustaining the doctrine was delivered by Ch. J. GIBSON in
his usual forcible and vigorous style. Two however of
the five Judges dissented, and in the course of his opinion
the Chief Justice was obliged to set aside the opposing
authorities of *Burr vs. Mills*, 21 *Wend.*, 292, and *Preble*

Mitchell *vs.* Seipel.

*vs. Reed,* 17 *Maine,* 175. Against this case may be placed the decision in *Carbrey vs. Willis,* 7 *Allen,* 364, (where also the facts presented the question,) in which it was said by the Supreme Court of Massachusetts: " But where there is a grant of land by metes and bounds without express reservation, and with full covenants of warranty against encumbrances, we think there is no just reason for holding that there can be any reservation by implication, unless the easement is strictly one of necessity. Where the easement is only one of existing use and great convenience, but for which a substitute can be furnished by reasonable labor and expense, the grantor may certainly cut himself off from it by his deed, if such is the intention of the parties. And it is difficult to see how such an intention could be more clearly and distinctly intimated than by such a deed and warranty." In a subsequent case in the same State, (*Randall vs. McLaughlin,* 10 *Allen,* 366,) notice is taken of the fact that the authority of *Pyer vs. Carter,* had then recently been wholly denied by the Chancellor of England, in the opinion given in *Suffield vs. Brown,* which, says the Court, "contains an elaborate review of the whole doctrine, resulting in conclusions substantially like those to which we came in *Carbry vs. Willis.*

But the decision of our predecessors in *McTavish vs. Carroll,* 7 *Md.,* 352, has been pressed upon our attention by the appellee's counsel. That was a case peculiar in its facts and circumstances. A father who owned a large tract of land on which there was a mill, mill-dam, race and roadway for repairing it, conveyed by a *voluntary deed of gift,* the portion on which the dam, race and road were situated, to his daughter without reservation, and subsequently by a *like deed,* conveyed the portion on which the mill was located to his son, and in *both deeds reserved a life estate to himself.* The Court held that the grantee of the portion on which the mill was situated, was entitled

to the use of the dam, race and road upon the principle of *legal necessity*, but also adverted to the fact as distinguishing that case from the authorities there cited, that the two deeds gave the grantees the right of possession at the *same time*, viz., upon the death of the grantor, he having reserved to himself a life estate in both parcels of land. There was in fact, therefore, no *antecedence* of title of one grantee to the other, and in view of the authorities to which we have referred, the decision of that case might well have been rested on that point alone. But it was in other respects materially different from the present case, and cannot control its decision. Neither in that case nor in that of *Oliver vs. Hook*, 47 *Md.*, 301, were the views of *Gale on Easements*, adopted further than in reference to implied grants, and in the latter case, it was held upon abundant authority, that even the doctrine of implied grants had no application to the case of an ordinary, open and unenclosed *way*, not being at the time of the grant an existing easement.

Finding then no binding decision of this Court, and no decided preponderance of authority in this country, to prevent us from following the law as it has recently been settled by the decisions in England, and being satisfied the distinction so clearly drawn in those decisions between what has been called an implied grant, and what has been attempted to be established under the name of an implied reservation, is not only founded in reason, but has existed almost as far back as the law upon the subject can be traced, we shall apply it to the case before us.

It remains then to ascertain whether this alley is a way of necessity, so as to fall within the exception to the second proposition stated in *Wheeldon vs. Burrows*. Among the cases coming under this exception, reference may be made to *Pinnington vs. Galland*, 9 *Excheq.*, 1, and *Davies vs. Sear, Law Rep.*, 7 *Eq.*, 427. In those cases the ways in question were ways of necessity, and the decisions went

18        v. 53.

upon that ground. But we are all clearly of opinion this alley is not such a way. We adopt as entirely applicable to the present case, what was said in *Dodd vs. Burchell,* 1 *Hurl. & Colt,* 113, by WILDE, B., viz., "It appears at the time of the grant in respect of which the right of way is claimed, there was a way from the house into the garden, and that way now exists. But it is said the way now claimed is more convenient than the other. Then comes the question whether the plaintiff can claim it as a way of necessity, on account of its great superiority over the other way. It seems to me that it would be most dangerous to hold, that where a *deed* is silent as to any reservation of a way, the one that is more convenient to use than another way, must exist as a way of necessity. There is no foundation whatever for such a doctrine." When the deed of 1865 from Waters to Chandler was executed, access to the yard and kitchen of the house retained by the grantor could be had, not only through the front door of the house, but from Gould lane in the rear. Such public lanes or alleys are to be found in almost every part of the City of Baltimore, and were made for the very purpose of affording access to yards and kitchens which could not otherwise be reached save through the front doors of the houses. Most of the dwellings in that city have such alleys in the rear, and no entrance from the front except a door which opens into a hall or front room. It is true the proof shows there was a brick stable on the plaintiff's lot fronting on Gould lane, but it was built by the plaintiff himself, and not until after the year 1872. If this obstructed access from Gould lane, it was the plaintiff's own fault. He certainly could not by his *own act,* without consent and against the rights of the defendant, convert this alley from a way of convenience to a way of necessity. Whether it is a way of necessity or not, must depend upon the state of things existing at the date of the deed of 1865, and not with reference to the changes

subsequently made by the plaintiff on his own premises. At that time the alley was, as it is now, useful and convenient, but it was not what the law regards as a way of necessity.

But it has been further argued, there ought to be an implied reservation of this alley, because that part of the house granted by the deed of 1865, which is above the alley, is supported by the wall of the house retained by the grantor. The contention on this point is, that the alley and this support afforded the granted house make a case of reciprocal easements. But we do not see how the fact, that there may be an implied grant of this easement or right of support, can be held to take from the grantee the ground used for the alley, which was expressly granted to him without reservation. The two are not necessarily or inseparably connected. The case is not like that of *Richards vs. Rose*, 9 *Excheq.*, 218, where a block of houses on a plot of ground were so built together by the same owner as necessarily to require *mutual support.* In that case it was held that there was, either by a presumed grant or by a presumed reservation, a right to such mutual support, so that the owner who sells one of the houses as against himself grants such right, and on his own part also reserves the right, and consequently the same mutual dependence, of one house upon its neighbor's still remains. This furnishes another instance of an *easement of necessity* within the exception to the general rule forbidding implied reservations. The present case, however, is quite different. It does not come up to that case, nor does it touch the cases or the law of *party walls*, nor even that of an alley situated and constructed in the manner described in the case of *Dowling vs. Hennings*, 20 *Md.*, 179.

It follows that there was error in granting the instruction given by the Court, and for this the judgment must be reversed. The Court, however, was clearly right in excluding, at the instance of the defendant, the agree-

ment, under seal, between Chandler and Waters, of the 8th of June, 1865, which professes to grant the common use of this alley. That instrument was never recorded, and was not embodied in or referred to by the deed of the same date. It can have no effect in determining the construction or operation of that deed, nor can it in any wise affect the rights of the parties to this suit. It, therefore, plainly appears, from the record before us, that the plaintiff has no ground of action, on account of the obstruction complained of, and it hence becomes the duty of this Court not to award a new trial.

> *Judgment reversed,*
> *and new trial refused.*

(Decided 11th March, 1880.)