BRIDGET BURNS, and others *vs.* JOHN WILLIAM GAL-
LAGHER, and others, infants, by their next friend
BRIDGET GALLAGHER, and BRIDGET GALLAGHER,

*Easement—Implied grant—Estoppel—Easement or quasi Ease-
ment—Presumption of Reservation of existing Easement or*
*quasi Easement—Implied reservation.*

In 1859, McN. owned the leasehold estate in three adjoining lots or
tenements in the City of Baltimore, fronting each twelve feet on
the north side of Eager street, and running back for a depth of
sixty feet to an alley two feet two or three inches wide. These
lots lay between Decker street on the east, and an alley three feet
wide on the west, and each lot had a building thereon that cov-
ered the entire front. The lots may be designated as the western,
central and eastern lots. The back alley at the foot of the lots was
fenced on each side, and was used in common by the occupants of
all three of the houses for many years, and was the only way of
ingress and egress to and from the back yard of the middle tene-
ment, except by or through the front door of the house. There
had been for many years at or near the end of the middle lot a
water closet or privy, which was used in common by the occupants
of the three houses, they having access thereto by means of this
alley; and it was only by means of this alley that the privy could
be cleaned, unless the contents were taken through the western
premises, or through the front door of the middle house. There
was also a hydrant on the line dividing the middle from the eastern
lot, and the waste water from that hydrant escaped from the back
yard of the middle lot to the alley, and by the alley to Deckor
street; and without such drainage there would be no escape for the
water from that tenement. In 1859, McN. sold the lots to S., who
in 1865, sold them to C., who paid the purchase money therefor.
But there being some difficulty in getting possession of the west-
ern and middle lots from the tenants then occupying them, C. took
the legal assignment only of the eastern lot, without any reserva-
tion whatever for the benefit of the other lots; and in order to get
his money back he assisted or co-operated with S. in making sale
in 1866, of the western lot to McI., and of the middle lot to G.;
and upon such sales being made he was reimbursed the money that
he had paid S. for these two lots. At the time of the sale of these

lots to G. and McI. and long previous thereto, the alley and the drain were in existence, open and apparent, and in constant use. In 1867, C. sold and assigned the eastern lot to B. and they used and allowed the occupants of the middle lot to use the alley and drain as formerly. The deed from C. to B. conveyed the lot and premises by metes and bounds, and made no express reservation whatever for the benefit of the other lots. In October, 1882, B. stopped up and completely obstructed the use of the back alley both as a way and as a drain, thereby depriving the occupants of the middle lot of the use of what they claimed to be a necessary easement to the beneficial enjoyment of their premises. In a suit by the owners of the middle lot against the owners of the eastern lot, to determine the question of the right of the former to the use of the alley, it was HELD:

1st. That the right to the use of the alley, as it had been formerly used, was conceded and confirmed to G., the assignee of the leasehold estate in the central lot, by implied grant, or rather by way of estoppel upon the special facts of the case.

2nd. That C., the equitable vendor of the middle lot to G. was bound and concluded in respect to the easement over the eastern lot retained by C.; and the defendants claiming and holding that lot under him, with notice, were equally bound with him. They were bound to allow, as he would be bound to allow, the use of the alley as it was used at the time of the sale of the lot to G., under whom the plaintiffs claimed; and being so bound, their obstruction of the alley was illegal.

No easement or *quasi* easement can be taken as reserved by implication, unless it be *de facto* annexed and in use at the time of the grant, and it be shown, moreover, to be actually necessary to the enjoyment of the estate or parcel retained by the grantor. And such necessity cannot be deemed to exist if a similar way or easement may be secured by reasonable trouble and expense, and especially not if the necessary way or easement can be provided through the grantor's own property.

In order to give rise to the presumption of a reservation of an existing easement or *quasi* easement, where the deed is silent upon the subject, the necessity must be of such strict nature as to leave no room for doubt of the intention of the parties that the adjoining properties should continue to be used and enjoyed, in respect to existing easements or *quasi* easements, as before the severance of ownership, for otherwise parties would never know the real purport of their deeds.

If the grantor intends to reserve any right or easement over the property granted, it should be done by express terms, and not afterwards require a plain grant, it may be for full consideration, to be limited and cut down by any mere implied reservation of privileges over the property granted. It is only in cases of the strictest necessity, and where it would not be reasonable to suppose that the parties intended the contrary, that the principle of implied reservation can be invoked.

APPEAL from the Superior Court of Baltimore City.

This was an amicable suit brought by the appellees against the appellants for the purpose of determining the question of the right of the former to the use of an alley in the rear of their premises, as a way and as a drain. The case is stated in the opinion of the Court. The following plat will facilitate the understanding of the matters in controversy:

The cause was argued before ALVEY, C. J., YELLOTT, MILLER, RITCHIE, and BRYAN, J.

*Frank X. Ward,* for the appellants.

If the grantor intends to reserve any right over the property granted, it is his duty to reserve it expressly in the grant, and the operation of a plain grant not pretended to be otherwise than in conformity with the contract between the parties, ought not to be limited and cut down by the fiction of an implied reservation; and the grantor cannot derogate from his own absolute grant so as to claim rights over the thing granted, even if there were at the time of the grant, continuous and apparent easements enjoyed by an adjoining tenement which remains the property of the grantor. *Suffield vs. Brown, 4 DeG., J. & S.,* 185; *Crossley & Sons vs. Lightowler, Law Rep., 2 Ch. App.,* 478; *Tenant vs. Goldwin, 2 Ld. Ray.,* 1089.

Where there is a grant of land by metes and bounds, without express reservation, and with full covenant of warranty against encumbrances, there is no just reason for holding that there can be any reservation by implication, unless the easement is strictly one of necessity.

Where the easement is only one of existing use and great convenience, but for which a substitute can be furnished by reasonable labor and expense, the grantor may certainly cut himself off from it by his deed, if such be the intention of the parties; and it is difficult to see how such an intention could be more clearly and distinctly intimated than by such a deed and warranty. *Carbrey vs. Willis, 7 Allen,* 364.

It would be most dangerous to hold that where a deed is silent as to any reservation of a way, the one that is more convenient to use than another way, must exist as a way of necessity. There is no foundation whatever for such a doctrine. *Dodd vs. Burchell, 1 Hurl. & Colt.,* 113; *Mitchell vs. Seipel, 53 Md.,* 274.

A right of way of necessity, can only be raised out of the land granted or reserved by the grantor, and never out of the land of a stranger.   *Oliver vs. Hook,* 47 *Md.,* 308.

"If a man owning two tenements, has built a house on one, and annexed thereto a drain, passing through the other, if he sell and convey the house with the appurtenances, such drain may be construed to be *de facto* annexed as an appurtenance, and pass with it; and because such construction would be most beneficial to the grantee : Whereas, if he were to sell and convey the lower tenement, still owning the upper, it might reasonably be considered that as the right of drainage was not reserved in terms, when it naturally would be, if so intended, it could not be claimed by the grantor.   The grantee of the lower tenement, taking the language of the deed most strongly in his own favor and against the grantor, might reasonably claim to hold his granted estate free of the encumbrance."   *Johnson vs. Jordan,* 2 *Met.,* 240; *Leonard vs. White,* 7 *Mass.,* 8; *Grant vs. Chase,* 17 *Mass.,* 443; *Randall vs. McLaughlin,* 10 *Allen,* 366.

The owner of a city lot must so improve it as to prevent its surface water from annoying an adjacent owner.   *Bentz vs. Armstrong,* 8 *W. & S.,* 40.

The owner of land may at his pleasure withhold the water falling on his property from passing in its natural course on to that of his neighbor, and in the same manner may prevent the water falling on the land of the latter from coming on to his own.   *Bowlsby vs. Spear,* 31 *N. J. L.,* 352; *Pettigrew vs. Village of Evansville,* 25 *Wis.,* 227 ; *Hoyt, et al. vs. City of Hudson,* 27 *Wis.,* 656 ; *Bassett vs. Company,* 43 *N. H.* 573; *Swelt vs. Cutts,* 50 *N. H.,* 439 ; *Parks vs. Newburyport,* 10 *Gray,* 28.

*Edgar H. Gans,* for the appellees.

No case has yet arisen deciding the question as to whether such an alley is a necessity.   The case of *Mitchell*

*vs. Seipel* differs essentially from it, for in that case there was an alley just like this, open to the use of the owner of the property; an alley, as the Court say, page 274, such as is "found in almost every part of the city of Baltimore, and was made for the very purpose of affording access to yards and kitchens, which could not otherwise be reached save through the front doors of the houses." The contention there was for a front alley besides. In addition to this, the Court say, on page 263, "nor is the case complicated by any easements of drainage or sewerage, nor does the surface drainage pass through the alley." In this case the surface drainage has passed through the alley for twenty-five years.

Most of the cases are country cases, and throw no light on this question. A house in the city of Baltimore, which has no access to the yard save through the parlor and front door of the house, which has no drainage of any kind, where water must collect and stagnate unless carried away in buckets, where the sink must be cleaned through the parlor, is practically uninhabitable. It could neither be decently lived in, nor sold or mortgaged, at anything approximating its legitimate value. The alley is absolutely necessary for drainage, and strictly necessary, in the rational sense, for all the other purposes connected with the yard, kitchen and sink of a dwelling. *Lawton vs. Rivers,* 2 *McCord,* 448; *Goodall vs. Godfray,* 53 *Vt.,* 222-3; *Morris vs. Edgington,* 3 *Taunt.,* 31; *Watts vs. Kelson, L. R.,* 6 *Ch. App.,* 175; *Batcheldor's Case,* 3 *N. H.,* 192; *Boone on Real Property, sec.* 143, *and cases cited.*

But Coffay, having bought both lots in 1865, under a written contract, and paid for them, was the substantial and real owner thereof until the appellees' lot passed to Gallagher through Sanders, (Sanders until then retaining the legal title,) in 1866.

This was the real substantial point of severance. At this time Coffay remained owner of the servient estate,

and in the grant to Gallagher impliedly *granted* all apparent and continuous easements, which were at the time reasonably necessary to a fair use of the property granted. There is nothing in the case of *Oliver vs. Hook,* 47 *Md.,* 301, opposed to this view, as that case had reference only to an ordinary, open and unenclosed way, (page 309,) and ordinary ways of that character are not regarded as continuous. See also *Du Val vs. Du Val,* 21 *Md.,* 154–5; *Janes vs. Jenkins,* 34 *Md.,* 7; *Kieffer vs. Imhoff,* 26 *Penn. St.,* 443; *Phillips vs. Phillips,* 48 *Pa. St.,* 178, 184.

ALVEY, C. J., delivered the opinion of the Court.

This case was tried in the Court below before the Judge without the assistance of a jury; and the finding of the Judge upon the evidence was for the plaintiffs. The finding is general, without the enumeration of the facts found to be established by the evidence; and this Court, of course, has no power to review the finding of the Court below upon the evidence, farther than to determine, upon prayer raising such question, whether there be evidence *legally* sufficient to be considered. The plaintiffs propounded no legal proposition for the determination of the Court; and the first four prayers offered by the defendants, and which were rejected, were simply to the effect that there was no evidence *legally* sufficient upon which the plaintiffs could recover; and the fifth prayer of the defendants was based upon what is contended to be the necessary legal conclusion, that upon the conveyances or assignments of title given in evidence, the plaintiffs were not entitled to recover. This prayer was also rejected by the Court.

It is contended for the plaintiffs that their right to recover may be sustained either by an *implied reservation* of a right to the easement claimed, or by *implied grant* thereof; but upon which ground the finding and judgment of the Court proceeded does not appear.

The undisputed facts would appear to be these : Thomas McNally was possessed, in 1858 or 1859, by virtue of subleases, of three adjoining lots fronting each twelve feet on the north side of Eager street, in the city of Baltimore, and running back for depth sixty feet to an alley two feet two or three inches wide. These adjoining lots lie between Decker street on the east and an alley three feet wide on the west, and each lot has a building thereon that covers the entire front. The lots may be designated as the western, the central, and the eastern lots; that to the west belonging to McIntyre, the central or middle lot to the plaintiffs, and the eastern lot, bounding on Decker street, to the defendants. The back alley at the foot of the lots ran from Decker street to and intersected the three foot alley on the west, which runs out to Eager street. This back alley was fenced on each side, and was used in common by the occupants of all three of the houses or tenements for many years, and was the only way of ingress and egress, to and from the back yard of the middle tenement, except by or through the front door of the house. There has been for many years, at or near the end of this middle lot a water-closet or privy, which has been, until within a few years past, used in common by the occupants of the three houses, they having access thereto by means of this alley; and it is only by means of this alley that this privy can be cleaned, unless the contents be taken through the premises of McIntyre, or through the front door of the plaintiffs' house. There is also a hydrant on the line dividing the middle from the eastern lot, and the waste water from that hydrant escapes from the back yard of the middle lot to the alley, and by the alley to Decker street; and without such drainage there would be no escape for the water from that tenement. The defendants have stopped up and completely obstructed the use of this alley, both as a way and as a drain, and thereby deprived the plaintiffs of the use of what they claim to be a neces-

sary easement to the beneficial enjoyment of their premises ; and the defendants claim the right to close the alley over their lot by virtue of an·unqualified title to the lot in themselves.

The titles to the respective lots were acquired by the present owners thus: In 1859, McNally, who owned the leasehold estate in all three of the lots or tenements, sold and assigned them to Levi Sanders; and the latter, in 1865, by a written contract, sold the three lots to Thomas Coffay, who duly paid the purchase money therefor. But there being some difficulty in getting possession of the western and middle lots from the tenants then occupying them, Coffay took the legal assignment only of the eastern lot, being that now owned by the defendants, without any reservation whatever for the benefit of the other lots; and in order to get his money back, he assisted or co-operated with Sanders in making sale of the other two lots,—the middle or central lot to Arthur Gallagher, under whom the plaintiffs claim, and the westerly lot to McIntyre.—and upon such sales being made, he was reimbursed the money that he had paid to Sanders for these two lots. These lots were sold to Gallagher and McInytre in 1866, and the deeds of assignments were made in that year, Coffay remaining owner of and holding the title to the easterly lot, that is now owned by the defendants. At that time, and long previous thereto, the alley and the drain were in existence, open and apparent, and in constant use ; and they have so remained open and apparent, and in constant use, until October, 1882, when the alley was closed, and the drain obstructed, by the defendants, as before stated. In September, 1867, Coffay sold and assigned the easterly lot, binding on Decker street, to the defendants ; and they used, and allowed the plaintiffs to use as formerly, the alley and drain to the time of the obstruction just stated. The deed of assignment from Coffay to the defendants conveys the lot and premises by metes and bounds, and

makes no express reservation whatever in respect to the easement now claimed by the plaintiffs. But notwithstanding the absence of all reservation by express terms in the deed of assignment, the question is, whether the defendants took their lot subject to the long existing, open and apparent *quasi* easement or servitude, for the benefit of the adjoining lot previously purchased by the party under whom the plaintiffs claim? If not, the judgment of the Court below should have been for the defendants.

Now, if we regard Sanders as remaining the owner of the westerly and central lots, after the deed of assignment to Coffay of the easterly lot, as the defendants contend he was in legal contemplation, there would seem to be great difficulty in concluding that there was any implied reservavation of the use of the alley and the drain to Decker street, for the benefit of the central lot. Being owner of the western lot, binding on the three foot alley, he could provide a way and a drain over that lot to the three foot alley for the benefit of the central lot, and thus relieve the easterly lot from the burden of maintaining the alley and drain to Decker street, as a servient tenement to the plaintiffs' lot. And that being reasonably possible, there would be no implied reservation of an existing easement or servitude through the lot granted for the benefit of an adjoining lot retained by the grantor. For the principle is well settled, and it is founded in reason and good sense, that no easement or *quasi* easement can be taken as reserved by implication, unless it be *de facto* annexed and in use at the time of the grant, and it be shown moreover to be *actually necessary* to the enjoyment of the estate or parcel retained by the grantor. And such necessity cannot be deemed to exist if a similar way or easement may be secured by reasonable trouble and expense, and especially not if the necessary way or easement can be provided through the grantor's own property. In order to give rise to the presumption of a reservation of an existing

easement or *quasi* easement, where the deed is silent upon the subject, the necessity must be of such strict nature as to leave no room for doubt of the intention of the parties that the adjoining properties should continue to be used and enjoyed, in respect to existing easements or *quasi* easements, as before the severance of ownership; for otherwise parties would never know the real purport of their deeds. If the grantor intends. to reserve any right or easement over the property granted, it should be done by express terms, and not afterwards require a plain grant, it may be for full consideration, to be limited and cut down by any mere implied reservation of privileges over the property granted. It is. only in cases of the strictest necessity, and where it would not be reasonable to suppose that the parties intended the contrary, that the principle of *implied reservation* can be invoked. *Mitchell vs. Seipel,* 53 *Md.,* 251; *Wheeldon vs. Burrows,* 12 *Ch. Div.,* 31; *Johnson vs. Jordan,* 2 *Metc.,* 234; *Carbrey vs. Willis,* 7 *Allen,* 364; *Randall vs. Mc-Laughlin,* 10 *Allen,* 366. Whether the learned Judge below found, as matter of fact on the evidence before him, the existence of such necessity for the use of the alley, does not appear, and we cannot infer that he did so find.

But notwithstanding the right to the easement claimed may not be supported upon the principle of implied reservation, yet we think, upon the evidence before him, the learned Judge was well justified in concluding that the right to the use of the alley, as it had been formerly used, was conceded and confirmed to Gallagher, the assignee of the leasehold estate in the central lot, by implied grant, or rather by way of estoppel upon the special facts of the case. At the time of the assignment to Gallagher, in 1866, Coffay was in fact and reality the owner of all three lots, and remained the owner of the defendants' lot until 1867, and, of course, was able and competent to grant or impose upon the latter lot any easement or servitude

that he might think proper. He had purchased and paid for all three of the lots, under written contract, and it was for his benefit that the middle and westerly lots were sold and transferred to Gallagher and McIntyre, as thereby he was repaid his purchase money. We may suppose these purchasers were induced to buy and pay for the lots, as doubtless they were, because of the existence of the apparent easements and privileges annexed to them; and in order to ascertain what passed to the purchasers under the assignments of the leases, regard must be had to the state of the premises, and the manner of their enjoyment, at the time the assignments were made. The general principle of law is, that where a person makes a grant or conveyance of property he impliedly grants that also which is necessary to make the grant or conveyance of the principal subject effectual and beneficial; and in this case we must suppose that it was the intention, as doubtless it was the expectation, of the parties, that the premises sold and transferred to Gallagher should be used and enjoyed with the same easements and privileges with which they had previously been used and were then enjoyed. And Coffay being then the owner of the easterly lot, through which the alley ran to Decker street, and being a party to the sale of the middle or central lot to Gallagher, beneficially interested therein, he would be estopped to deny or question the right of the occupants of the latter lot to use the alley as it was then and had been formerly used, through the adjoining lot on the east. He would not be allowed to obstruct the use of the alley; and those claiming under and taking title from him, with notice of the existence, and the nature and extent of the use of the alley, by the occupants of the central lot, can stand in no better position than Coffay himself. Sanders, it is true, executed the legal transfer of title to Gallagher, but it was done by and with the consent and for the benefit of Coffay; and he should be as much concluded thereby

as if he had been a formal party thereto. And that being so, by analogy to the well settled principle that all apparent easements or *quasi* easements which are *necessary* to the reasonable enjoyment of the premises granted, and which have been, and are at the time of the grant, used, or allowed to be used, by the owner of the entirety for the benefit of the part granted, will pass to the grantee by implication, Coffay, the equitable vendor, was bound and concluded in respect to the easement over the eastern lot retained by him; and the defendants claiming and holding that lot under Coffay, with notice, are equally bound as Coffay himself. They are bound to allow, as Coffay would be bound to allow, the use of the alley as it was used at the time of the sale of the lot to Gallagher, under whom the plaintiffs claim. And being so bound, their obstruction of the alley was illegal. For the doctrine of *implied grant* of easements or *quasi* easements, applied in this case by analogy, and given operation by way of estoppel, we need only refer to the cases of *Janes vs. Jenkins,* 34 *Md.,* 1; *Mitchell vs. Seipel,* 53 *Md.,* 251; *Wheeldon vs. Burrows,* 12 *Ch. Div.,* 31; and *Hall vs. Lund,* 1 *Hurl. & Colt.,* 676.

Entertaining these views we shall affirm the judgment of the Court below.

*Judgment affirmed.*

(Decided 2nd July, 1884.)