# MARYLAND REPORTS.

## OCTOBER TERM, A. D., 1873.

### Philip Gladfelter *vs.* Joseph Walker.

*Pleading in an Action to recover Damages for Polluting a stream of Water—Admissibility of Evidence—Water Course: Right of Action for Polluting a Stream—Measure of Damages—Counts that may be Joined.*

In an action to recover damages for fouling a stream which flowed through the farm of the plaintiff, the last three counts of the declaration alleged substantially, that the stream had long flowed through the plaintiff's farm in a pure state, but that some months prior to the institution of the suit, the defendant had fouled and was daily continuing to foul the same, by throwing into it certain poisonous substances. The second plea of the defendant stated, that at, and long before the time of the committing of the grievances alleged there was, and still is, an ancient paper mill erected upon said stream, and near the plaintiff's land, to which mill was, and still is, annexed the right to use the water of the stream for all purposes belonging to the manufacture of paper, and that said mill was from its erection used in such manufacture with the knowledge and acquiescence of the plaintiff; that the defendant purchased the mill and the right appurtenant thereto, to use the water of the stream for all the purposes of paper manufacture, and that down to the time of such purchase, no objection was made by the plaintiff; that the defendant made use of the water reasonably and properly according to the customary methods of manufacturing paper, using only such chemicals and other substances, and employing only such methods and processes as were fit to be used about the manufacture of paper, and conducted the business of manu-

Gladfelter *vs.* Walker.

facturing paper in the said mill, in all respects, in a reasonable and proper manner. HELD:

That this plea was bad, in that having averred that there was a right appurtenant to the mill to use the water in the manufacture of paper, and that the plaintiff had acquiesced in this right up to the time of the purchase of the mill by the defendant, it failed to aver a user, and acquiescence by the plaintiff, for period of twenty years.

The fourth plea which averred that other mill-owners than the defendant had acquired a prescriptive right to foul the stream which flowed through the plaintiff's farm, was also bad, for such prescriptive right acquired by others, was no bar to the plaintiff's right to recover as against the defendant for fouling the stream.

Where the declaration expressly charges the defendant with fouling the stream which flowed through the plaintiff's farm, by throwing in to it certain poisonous substances, a plea that there was annexed to the defendant's mill a prescriptive right to use the water for all reasonable purposes in the manufacture of paper, and that the defendant had so used the water, and not otherwise, is defective in that it does not expressly deny, nor does it directly confess and avoid the facts stated in the declaration.

To a declaration which charges the defendant with fouling a stream, to the use of which in its natural state, the plaintiff claimed to be entitled, it is not a proper answer to aver that upon the same stream of water, above and below the paper mill of the defendant, there are other paper mills which have existed and been used as such for more than twenty years prior to the time of committing the alleged grievances, and at the said last mentioned time, the water of said stream was used at said mills in the manufacture of paper, and the defendant manufactured paper at his mill in the usual manner and with reasonable care.

At the trial of an action to recover damages for fouling a stream which flowed through the farm of the plaintiff, he proved that he was the owner of the farm, and that he had resided thereon for seventy years; that there were dwellings, a barn, and a grist mill on said farm; that prior to December, 1869, when the defendant and Dushane his partner, commenced the use of the mill, the water of the stream had been pure, clear and limpid, and was used for household purposes, and for watering the cattle and stock, but that from and after the date mentioned, the character of the stream had been changed, and the water flowed daily for several hours, of a color nearly black, and was covered with foam from bank to bank; that it was unfit for domestic use, and that the plaintiff was obliged to

Gladfelter *vs.* Walker.

make other arrangements for watering his stock; and that such discoloration in, and foam on the water proceeded from substances thrown into it at the defendant's mill. The plaintiff also proved by the witness Ball, that he owned a farm on the stream about two miles below the plaintiff's; that ever since the defendant and Dushane commenced to work the mill, the water of the stream was black for six or seven hours, once, and sometimes twice a day, and that the stones at the bottom were discolored. The witness further stated that there were several others paper mills on the stream, above defendant's mill, but none between the defendant's mill and the property of the witness, and that the water of the stream was never discolored before it was done by the defendant. The plaintiff then proposed to ask the witness, whether he had an opportunity to ascertain the effect produced on cattle, by the use of the water, and if so, to describe it? To this question the defendant objected, but the Court overruled the objection, and the witness answered that after the water became so impure, he lost by death two horses and a number of hogs, and that on opening them, he found the bladder nearly destroyed, and he found them filled with the polluted water, or what looked like it. On appeal by the defendant it was Held:

That this evidence was admissible in connection with other facts, to go to the jury, to enable them to determine whether the stream had been rendered unfit for use by the acts of the defendant.

The owner of land through which a stream flows, is entitled to the use of the water in its natural state, and any one who pollutes it, so as to render it unfit for such use, is liable in an action for damages, unless he has acquired by grant or prescription, an adverse right against the owner of the land.

And where a stream is polluted by one who has not acquired a right so to do, by long enjoyment or grant, an action will lie against him by the owner of the land through which the stream flows, although he may not have suffered any actual damage.

Where the owner of a farm through which a stream flows, brings an action to recover damages for polluting the stream, he is entitled to recover such damages as naturally or necessarily resulted from the wrongful acts of the defendant; the loss of an opportunity by the plaintiff to rent his grist mill, the diminution in the rental value of his farm, and the inconvenience he may have been put to in the use of the same, resulting directly from the conduct of the defendant, are proper elements for the consideration of the jury in estimating the damages.

A count for entering and breaking the plaintiff's close, may be properly joined with counts for polluting a stream of water, to the use of which in its natural state, he is entitled.

APPEAL from the Superior Court of Baltimore City.

This was an action instituted by the appellee against the appellant and one John A. Dushane, in the Circuit Court for Baltimore County, and on the affidavit of the appellant was removed to the Superior Court of Baltimore City. Dushane was returned *non est.* The declaration contained six counts ; the first was a count in trespass *quare clausum fregit.* The second count stated that the plaintiff was possessed of a mill in Baltimore County, and by reason thereof, was entitled to the flow of a stream for the working of the same, and the said defendants by cutting the bank of said stream, diverted the water thereof from the mill. The third count stated that the plaintiff was seized and possessed of a certain farm in Baltimore County, and was entitled to the flow and use of a certain stream of water accustomed to flow through said farm, wherewith to water his horses, cattle and stock, and the defendants had wrongfully deprived him of the use of said stream of water by cutting the bank thereof, and diverting the water away from the land of the plaintiff. The other counts of the declaration charged with some variety of allegation, that the plaintiff, as the owner of a tract of land through which the stream of water flowed, had been injured by the manner in which the water of the stream had been dealt with by the defendants, who occupied land higher up, on which was a paper mill—that the defendants put noxious substances into the stream, which so poisoned and polluted it, as to make it unfit for the domestic uses of the plaintiff. The appellant pleaded six pleas. The first stated : "that the defendant did not commit the wrong alleged." The second is sufficiently set out in the opinion of the Court. The third that "the defendant did what was complained of by the plaintiff's leave." The fourth stated that upon the said stream of water, and above the said mill of the defendant were divers other paper mills, which for a long time, to wit, for a period of

more than twenty years, had been used in manufacturing paper; and at which mills, chemicals and other substances of the same kind, quality and description as those used by the defendant, and complained of by the plaintiff in this action were employed, and at the time of the committing of the said suppposed grievance, and for more than twenty years before the time of the said supposed grievance, and the water of the said stream was caused by the owners of the said last mentioned mill, (who were other persons than this defendant or said Dushane, and wholly unconnected with them,) to be impregnated therewith; and the same water flowed down to the said paper mill of the defendant, so impregnated; without this, that the water of said stream did flow at and before the time of the said supposed grievance, or was accustomed to flow, or but for said alleged acts and doings of the defendant, would have flowed through the land of the plaintiff in as natural and unpolluted a state as the plaintiff had alleged. The fifth plea stated that the said mill of the defendant was an ancient paper mill, used as such for more than twenty years before the committing of the supposed grievance, and that annexed and appurtenant to it was the right and privilege of making use of the water of the stream for all reasonable purposes and uses belonging to the manufacture of paper, and the water had been so used by the defendant, and not otherwise, which was the same matter complained of by the plaintiff in this action, without this that the defendant committed the wrong alleged. The sixth stated that upon the same stream of water in the said declaration mentioned, and higher up upon the same than the said mill of the defendant, and also below said defendant's mill, were divers other paper mills, which had existed and been used as such paper mills for many years last past, and for more than twenty years before the committing of the said supposed grievances, and at the said last mentioned time, the water of said stream was

used and employed at said mills, in and about the manufacture of paper, and the defendant manufactured paper at his said mill in a reasonable, proper and customary manner, and not otherwise, and used only such substances and compounds, and employed such methods and processes as were commonly and ordinarily used in the manufacture of paper, and exercised due care in and about said manufacture, and in the use of his said paper mill, and of said stream, and did not impregnate, alter or affect said water of said stream, more than the business of manufacturing paper, as so by him reasonably conducted, necessarily required.

The plaintiff demurred to the second, fourth, fifth and sixth pleas, and the demurrer was sustained by the Court. Issue being joined on the first and third pleas, the case was tried, and the jury gave a verdict for the plaintiff, damages *one cent*. A motion was made by the defendant in arrest of judgment; the motion was overruled, and judgment was entered on the verdict for the plaintiff, for one cent damages and costs.

*First Exception.*—This is stated in the opinion of the Court.

*Second Exception.*—The plaintiff offered the following prayers:

1. That every man must so use his own property as not to injure that of another, and if the jury shall find that the drainage or refuse from the defendant's paper mill was prior to the institution of the suit, discharged into a stream of water which flowed through the land of the plaintiff, and that the stream was thus soiled or polluted to the injury of the plaintiff, then he is entitled to recover, even if the jury shall believe that the business carried on by the defendant at said mill was a lawful one, conducted in the usual manner and with the usual precaution.

2. If the jury find the facts set forth in the preceding prayer, the plaintiff will not be precluded from recovering

in this action, because there are other paper mills upon the stream mentioned in said prayer, nor because said other mills have heretofore discharged or still do discharge impurities into the stream.

3. If the jury shall find the facts set forth in the first prayer of the plaintiff, then he is entitled to recover for all loss which he has incurred by reason of such pollution of the stream between the time the same commenced and the institution of this suit, the 4th day of May, 1871, and in estimating such damages, the loss of the opportunity for renting his grist mill, will be a proper element to be considered, if the jury believe that he lost such opportunity, because of the conduct of the defendants, and that the diminution in the rental value of the farm of the plaintiff, or any inconvenience to which he may have been put in the use of his said farm, and the buildings upon the same, by reason of such conduct, will also be a proper element for the consideration of the jury in making up their estimate of damages.

The Court, (DOBBIN, J.,) granted the plaintiff's prayers, the first, in connection with the defendant's second.

The defendant presented six prayers, the first, second, third and fifth of which were conceded or granted; the fourth and sixth as follows, were refused:

4. That if the stream upon which the defendant's mill was situated, has been for more than thirty years used by paper manufactories, and if there are paper mills above and below the defendant's on said stream, and if at the mill owned by the defendant, as well as said other mills, for more than twenty years before the institution of this suit, certain chemical compounds, viz: soda ash, lime, bleaching powder and sulphuric acid, have been used in the manufacture of paper, and the refuse of said chemical compounds, being all that was not consumed in the process of manufacturing paper, has been, for more than twenty years before the institution of this suit, emptied

into said stream, and if in manufacturing paper from straw in a proper and customary manner, by means of said chemical compounds, the organic matter of the straw becomes charred, and thus discolors without otherwise injuring the water flowing from said mill into said stream, and the water flowing from said paper mill of the defendant into said stream, is in other respects the same as it has been accustomed to flow from said mill for more than twenty years before the institution of this suit, and is not injurious, then such discoloration is not a ground of action in this case.

6. If the jury find there are other and numerous mills used for the manufacture of paper upon the stream mentioned in the pleadings, and upon other streams flowing into the said stream, and in the neighborhood of the farm of the plaintiff, both above and below the said plaintiff's farm, and that the water power in said neighborhood is, and has been, for more than twenty years before the bringing of this suit, been used for manufacturing purposes, in connection with the said paper mills, then the plaintiff is not entitled to recover, unless the jury shall further find that the plaintiff has sustained and suffered actual damage by the using and working of the defendant's mill.

The defendant prosecuted this appeal.

The cause was argued before BARTOL, C. J., STEWART, GRASON, MILLER and ROBINSON, J.

*George T. Beall* and *Arthur W. Machen*, for the appellant.

*William A. Fisher*, for the appellee.

ROBINSON, J., delivered the opinion of the Court.

This suit was brought to recover damages of the appellant, defendant below, for entering and breaking the

plaintiff's close, and for fouling a stream of water, known as "The Little Falls of the Gunpowder," which flowed through the farm of the plaintiff.

The declaration contains six counts: The last three counts allege substantially, that the stream had long flowed through the plaintiff's farm in a pure state, but that some months prior to the institution of this suit, the defendant had fouled, and was daily continuing to foul the same by throwing into it certain poisonous substances.

The appellant filed six pleas, and the appellee demurred to all except the first and third, upon which he joined issue.

The second plea states that at and long before the time of the committing of the grievances alleged, there was, and still is, an ancient paper mill erected upon said stream, and near the appellee's land, to which mill was, and still is, annexed the right to use the water of the stream for all purposes belonging to the manufacturing of paper, and that said mill was from its erection, used in such manufacture with the knowledge and acquiescence of the plaintiff; that the defendant purchased the mill, and the right appurtenant thereto, to use the water of the stream for all the purposes of paper manufacture, and that down to the time of such purchase, no objection was made by the plaintiff—that the defendant made use of the water reasonably and properly, and according to the customary methods of manufacturing paper, using only such chemicals and other substances, and employing only such methods and processes as are fit to be used about the manufacture of paper, and conducted the business of manufacturing in all respects in a reasonable and proper manner.

This plea is no answer to either of the counts in the declaration. As owner of the land through which the stream flowed, the plaintiff was entitled to the use of the water in its natural state, and if the defendant polluted the same, so as to render it unfit for use, he was

liable in an action for damages, unless he had acquired an adverse right against the plaintiff by grant or prescription. *Murgatroyd vs. Robinson*, 7 *Ellis & Bl.*, 391; *Dickinson vs. Grand Junction Canal Co.*, 7 *Exch.*, 282; *Wood vs. Waud*, 3 *Exch.*, 748; *Embrey vs. Owen*, 6 *Exch.*, 353; *Gardner vs. Trustees of Village of Newburgh*, 2 *Johns. Ch.*, 162.

The plea avers that there was a right appurtenant to the mill, to use the water in the manufacture of paper, and that the plaintiff had acquiesced in the exercise of this right up to the time of the purchase of the mill by the defendant, but it does not aver a user, and acquiescence by the plaintiff, for a period of *twenty years*. Where a prescriptive right to foul a stream is relied on, the plea should aver a continued and uninterrupted user for not less than twenty years.

The fourth plea is also bad. The fact that other mill owners had acquired such a prescriptive right, was no bar to the plaintiff's right to recover as against the defendant for fouling the stream.

The fifth plea is also defective. Every plea ought either to *deny, or confess and avoid* the facts stated in the declaration, and the averments in it ought to be *direct and certain,* and *not ambiguous.* The declaration expressly charges the defendant with fouling the stream, by throwing into it certain poisonous substances, and a plea of a prescriptive right to use the water for *all reasonable purposes* in the manufacture of paper, and that the defendant *had so used it* and had not used it in any other manner, does not expressly deny, nor does it directly confess and avoid the facts stated in the declaration. It may be that by the methods and processes adopted for the manufacture of paper, *at the time* when the *prescriptive right thus relied* on was acquired, the reasonable use of the stream for all the purposes of such manufacture *did not foul the stream;* whereas by another and different process adopted by the

defendant, and such *as is now usual and customary* in the manufacture of paper, the reasonable use of the water for the purposes of such manufacture may *necessarily foul the water*. If the defendant intended to rely upon a prescriptive right to foul the stream, such a right ought to have been pleaded in direct and unambiguous terms, and in the absence of such a plea, the averment of a right to use it for all reasonable purposes in the manufacture of paper, ought to be construed as a right to use the water in a manner not injurious to other proprietors.

The demurrer to the sixth plea was also properly sustained. If it be conceded that other mill owners had acquired the right to foul the stream, such a right, as we have before said, was no bar to this action; and the averment that the defendant conducted his business in the usual manner and with reasonable care, is no answer to a declaration which charges him with fouling a stream to the use of which the plaintiff was entitled.

The demurrer it is true, reaches back to the first fault in pleading, but we have not been able after a careful examination, to find any such defect in the plaintiff's declaration, as would have justified the Court in overruling the demurrer interposed by him.

The first count charges, that the defendant broke and entered certain land of the plaintiff, situate near Parkton, Baltimore County. This we think is a sufficient averment that the *locus in quo* is in Baltimore County. For these reasons, we are of opinion that the demurrer was properly sustained.

At the trial, the plaintiff proved, that he was the owner of a farm of about five hundred acres, through which the stream flows, and that he has resided on the farm for seventy years; that there were dwellings, a barn and a grist mill on said farm, that prior to December 1869, when the defendant and Dushane his partner, commenced the use of the mill, the water of the stream had been pure,

clear and limpid, and was used for household purposes, and for watering the cattle and stock, but that from and after the date mentioned, the character of the stream had been changed, and the water flowed, and still flows daily for several hours of a color nearly black, and is covered with foam from bank to bank; that it was unfit for domestic use, and that the plaintiff was obliged to make other arrangements for watering his stock;. and that such discoloration in, and foam on the water, proceeded from substances thrown into the water at the defendant's mill.

The plaintiff also proved by the witness Ball, that he owns a farm on the stream about two miles below the plaintiff's; that ever since the defendant and Dushane commenced to work the mill, the water of the stream is black for six or seven hours once, and sometimes twice a day, and that the stones at the bottom are discolored. The witness further stated, that there are several other paper mills on the stream above defendant's mill, but none between defendant's mill and the property of the witness, and that the water of the stream was never discolored before it was done by the defendant.

The plaintiff then proposed to ask the witness, whether he had an opportunity to ascertain the effect produced on cattle, by the use of the water, and if so, to describe it. To this question the defendant objected, but the Court overruled the objection, and the defendant excepted.

The witness answered that after the water became so impure, he lost by death two horses and a number of hogs, and that on opening them, he found the bladder nearly destroyed, and he found them filled with polluted water, or what looked like it.

This evidence was clearly admissible. One of the questions before the jury, was whether the defendant had so polluted the stream, as to render the water unfit for use. It might not necessarily follow, that because the water was discolored two miles below the plaintiff's farm,

that such discoloration was caused by the defendant, nor that the horses and hogs died from the effects of the water. Yet these were facts in consideration with other facts, to go to the jury, from which to determine whether the stream had been rendered unfit for use by the acts of the defendant.

The law applicable to the case, was fairly submitted to the jury. If the water of the stream was polluted by the defendant's throwing-into it, the drainings or refuse matter from his mill, the plaintiff was entitled to recover, unless the defendant had a prescriptive right so to foul the water.

The fact that other mill owners may have acquired such a prescriptive right, was no bar to the action. The plaintiff sues for an invasion of his rights by the defendant, and if such rights have been invaded, an action will lie, although he may not have suffered any actual damage.

Otherwise the defendant, by continuing the practice for twenty years, might establish as against the plaintiff, the right to discharge into the stream the foul water from his mill. *Wood vs. Waud*, 3 *Exch.*, 772; *Embrey vs. Owen*, 6 *Exch.*, 353; *Johns vs. Stevens*, 3 *Vt.*, 308; *Thomas vs. Brackney*, 17 *Barb.*, 654; *Ripka vs. Sergeant*, 7 *Watts & Ser.*, 9.

The defendant's fourth prayer was also properly refused. The plaintiff was not only entitled to the use of the stream, but to the water in its natural state, and the defendant had no right to discolor the same, by throwing into it the refuse matter of his mill, although such discoloration may not have been injurious to animal life. The question was not whether the acts of the defendant had rendered the water destructive to animal life, but whether the plaintiff was entitled to the use of it in its natural state, and if so, whether the defendant had interfered with that use. *"Aqua currit et debet currere, ut currere solebat."*

The sixth prayer was properly refused for reasons heretofore assigned.

Gladfelter *vs*. Walker.

The rule in regard to damages was correctly laid down. The plaintiff was entitled to recover such damages as naturally or necessarily resulted from the wrongful acts of the defendant, and the loss of an opportunity to rent his grist mill—the diminution in the rental value of the farm, and the inconvenience he may have been put to in the use of the same, resulting directly from the conduct of the defendant, were proper elements to be considered by the jury in estimating the damages. The verdict in this case being for one cent, it will hardly be contended that the damages were excessive.

The ground upon which the motion in arrest of judgment was based, a *misjoinder* of counts, even conceding that such a motion could be made in this case, is disposed of by *Williams vs. Bramble*, 2 *Md.*, 313.

There a count in trover was joined with a count in trespass *vi et armis de bonis asportatis*, and the Court said, there could be no misjoinder, where the same plea could be pleaded and the same judgment given on all the counts. So here there is no misjoinder, because the first count for entering and breaking the plaintiff's close, was joined with counts for polluting the stream, to the use of which he was entitled.

For these reasons the judgment below will be affirmed.

*Judgment affirmed.*

(Decided 3rd March, 1874.)