## JAMES M. KELLY v. JENNIE NAGLE.

*Easement—Taking Water From Spring—Rights Of Riparian Owners—Implied Grant—Severance Of Ownership— Quasi Easements—When Apparent and Continuous.*

An easement is extinguished when the ownership of the dominant and servient estates becomes united in one person.  p. 130

In order that a *quasi* easement may pass by implication and ripen into an easement for the benefit of the grantee of the dominant estate, it must have been, and must be at the time of the conveyance, apparent and continuous.  p. 132

A *quasi* easement is apparent, for the purpose of the rule, if it is visible, or it is such that it would come to the knowledge of a prospective purchaser of either the dominant or servient estate by such an examination of the premises as is ordinarily made by one desiring to purchase.  p. 132

A *quasi* easement is continuous, for the purpose of the rule, if there is a permanent adaption of the two tenements to the exercise of the easement.  p. 133

The *quasi* easement of taking water out of a spring by buckets is continuous, for the purpose of the rule, but, in the absence of any marks or indications on the servient tenement as to its exercise, it is not apparent.  pp. 133, 134

A deed which grants an easement to a person named, her heirs and assigns, is not to be construed as granting, not the fee simple or absolute interest in the easement, but only a life interest, merely because it sets forth in a preamble, without naming "heirs and assigns," that the grantor intends to grant the easement to such grantee.  p. 135

A riparian owner on a stream is entitled to have the water thereof flow down to his land as it is wont to flow, in its natural course and manner, unimpaired in quality and undiminished in quantity, with the limitation that every other riparian owner above is entitled to the reasonable use of the water.

pp. 137, 138

The owner of land containing a spring has no right, as against a riparian owner on a stream fed by the spring, to divert the water from the spring to other land which is not riparian, as by means of a grant to the owner of such latter land of the right to use the water.                                                              p. 140

The fact that the person to whom he undertakes to grant the right to use water from the spring owns land upon the stream is immaterial in this connection.                                              p. 139

The owner of land containing a spring, who also owns riparian land on a stream fed by the spring, may, as such latter owner, take measures on the land containing the spring, as by plugging a pipe, to prevent the diversion of water from the spring by a non-riparian owner to whom a former owner of the land containing the spring undertook to grant such right of diversion, without having the right to do so.                                   pp. 140, 141

A petition which attempts to present for the consideration of the appellate court a matter which, as growing out of circumstances arising after the decree appealed from, was not passed upon by the lower court, will not be received.          p. 141

*Decided March 9th, 1926.*

Appeal from the Circuit Court for Harford County, In Equity. (HARLAN, J.).

Bill by Jennie Nagle against James M. Kelly. From a decree for plaintiff, defendant appeals. Reversed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, and WALSH, JJ.

*Stevenson A. Williams,* with whom were *Fred R. Williams* and *Robinson & Fahey* on the brief, for the appellant.

*Robert H. Archer, Jr.,* with whom was *W. Worthington Hopkins* on the brief, for the appellee.

DIGGES, J., delivered the opinion of the Court.

This appeal is from a decree of the Circuit Court of Harford County perpetually enjoining the appellant (defend-

ant below) from in any way interfering with the water pipe which enters the spring of the defendant, or doing anything to prevent the flow of the water from the said spring through the pipe. This decree was passed upon a bill, answer and testimony, and was in response to a prayer of the bill. The bill was for an injunction to restrain the defendant from interfering with the plaintiff in the use of water from a spring located on the land now belonging to the defendant.

The facts as disclosed by the record are substantially these: Thomas F. Nagle, the father-in-law of the appellee, by deed dated March 1st, 1900, acquired from Alverda Hood and husband a tract of land in Harford County lying on the south side of the public road leading from Schuck's Corner to Thomas' Run, described by courses and distances in said deed, and containing according thereto fifty-six acres, twenty-seven perches, of land. Shortly after acquiring this property, Thomas F. Nagle moved to and resided upon the same. On March 27th, 1915, Thomas F. Nagle and wife conveyed to the appellant, James M. Kelly, a portion of the land which he had obtained from Hood. This deed described the land conveyed by courses and distances, and by such description contained forty-seven acres of land more or less. After this conveyance Thomas F. Nagle had remaining, according to the plat forming a part of the record, six acres twenty-seven perches of the land originally obtained by him from Hood. Upon this six acre twenty-seven perch tract were located the dwelling house of Thomas F. Nagle and also a large spring enclosed with a wall. This spring was located between the dwelling house and the public road, about one hundred and twenty-five feet distant from the latter. By deed dated April 19th, 1921, Thomas F. Nagle acquired in fee simple from Spencer Nagle a tract of land containing six and one-half acres, lying on the north side of the public road above referred to, and being separated from the tract upon which the spring was located by said public road. On February 14th, 1922, Thomas F. Nagle and wife conveyed to the appellee the six and one-

half acre tract on the north side of the road, which he had previously acquired from Spencer Nagle in 1921. This deed was a fee simple deed signed by Thomas Nagle and wife, and contained the following clause:

"Together with the buildings and improvements thereupon and all and every the rights, roads, ways, waters, easements and appurtenances thereto belonging or in any wise appertaining."

On November 16th, 1922, the following deed was executed by Thomas F. Nagle and wife to the appellee:

"This Deed, made this 16th day of November, in the year nineteen hundred and twenty-two by Thomas F. Nagle and Captola Nagle, his wife, of Harford County in the State of Maryland.

Whereas, Thomas F. Nagle, is the owner of certain lands situate in Harford County, State of Maryland, more particularly described in a deed from Alverda Hood and husband to said Thomas F. Nagle, dated March 1st, 1900 and recorded among the Land Records of Harford County in Liber W. S. F. No. 99, folio 167, on which there is located a spring which is about one hundred fifty (150) feet from the public road leading from Schuck's Corner to Thomas' Run.

And whereas the said Thomas F. Nagle intends to grant unto a certain Jennie Nagle the right and privilege of laying a water pipe, not exceeding three-quarters of an inch in diameter, from the said spring to the lands of Jennie Nagle near or adjoining the said lands of Thomas F. Nagle so that the said Jennie Nagle may enjoy the use of such water from said spring as she may need on her said property.

Now this deed witnesseth, that in consideration of the premises, and the sum of five dollars ($5.00) the receipt whereof is hereby acknowledged, the said Thomas F. Nagle and Captola Nagle, his wife, grant, bargain and sell unto the said Jennie Nagle, her heirs and assigns, an easement and right, use and privilege to draw and use from said spring, for the purposes aforesaid, all water that she may need on her said

property as aforesaid, with the right to said Jennie Nagle, her heirs and assigns, of ingress and egress over and upon the lands of the said Thomas F. Nagle for the purpose of keeping in repair the pipe as aforesaid.

Witness our hands and seals.

Thomas F. Nagle    (Seal)
Capitola Nagle    (Seal)

Test:

Lewis J. Williams."

Subsequent to the execution of this deed Thomas F. Nagle died, and Philip H. Close, trustee, under the decree of the Circuit Court of Harford County, sold and conveyed to the appellant, by deed dated May 19, 1924, that part of the land which Thomas F. Nagle had obtained from Hood, which was not sold by him during his lifetime, which contained six acres twenty-seven perches, and upon which the spring in question is located.

Some time in November, 1922, the appellee, in pursuance of the deed to her of November 16, 1922, giving her that right, laid a three-quarter-inch pipe from the spring across the county road to a milk house on her tract of six and one-half acres; and she continued to use this pipe until February, 1925, at which time the appellant plugged up the plaintiff's pipe in the said spring and felled some trees across the spring. Because of this action on the part of the appellant, this suit was instituted.

The plaintiff below (appellee here) claims her right to use the water from the spring for the benefit of her property on three grounds: First, by right of prescription acquired by adverse user by herself and her predecessors in title for more than forty years, during which time the water for the household and blacksmith shop located on her six and one-half acre tract was obtained from the spring in question continuously, without permission or license from the owners of the property on which the spring is located; second, that at the time of the execution of the deed of Thomas F. Nagle

to the appellee in February, 1922, there was an implied grant, appurtenant to the property sold, of the use of the spring in question, for the reason that at the time the grantor was the owner of the land on which the spring was located, and the occupants of the property sold to the appellee were at that time, and had been, for more than thirty years prior thereto, using the water from the spring; third, by virtue of the deed from Thomas F. Nagle and wife to the appellee, dated November 16th, 1922, expressly conveying her the right to lay and maintain the pipe from the spring to her property.

There may be some question as to whether or not the acts of user by the owners and occupants of the six and one-half acre tract, which is the dominant tenement, were sufficient to create an easement by prescription. It is unnecessary for us to determine that question in this case, for, assuming the contention of the appellee to be correct, and that the easement had been validly acquired by prescription, yet when the ownership of the dominant and servient estates became, in 1921, united in Thomas F. Nagle, any easement then acquired and existing was extinguished. In 14 Cyc., at page 1188, it is said: "An owner of land cannot have an easement in his own estate in fee, for the plain and obvious reason that in having the *jus disponendi,* the full and unlimited right and power to make any and every possible use of the land, all subordinate and inferior derivative rights are necessarily merged and lost in the higher right."

In *McTavish v. Carroll,* 7 Md. 352, at page 358, we said: "For a man cannot subject one part of his property to another by an easement, because he cannot have an easement in his own property, as the same object is obtained by him through the exercise of the general right of property."

In *Capron v. Greenway,* 74 Md. 289, we held that where one became the owner of the dominant and servient estates, and there was no one else entitled to either, they were merged and the easement was extinguished. And again, in *Duval v. Becker,* 81 Md. 537, this Court, speaking through

Judge McSherry, said: "It is true that when the same person becomes the owner of the dominant and servient estates, and there is no intervening or outstanding interest or title held by some one else in or to the appurtenant easement, the unity of the two estates in the one individual necessarily extinguishes and merges the easement appurtenant to the dominant estate, because no person can have an easement in the land which he himself owns." *Mitchell v. Seipel,* 53 Md. 251; *Oliver v. Hook,* 47 Md. 308.

The next question is whether or not, by reason of the deed of February 14, 1922, from Thomas F. Nagle to Jennie Nagle, there was an implied grant of the easement to use water out of the spring located upon the land then remaining in the ownership of Thomas F. Nagle. An implied grant of an easement is based upon the principle of construction that where a man grants a definite thing, there accompanies it, by implication, as a part of that grant, everything necessary to its reasonable enjoyment, or at least those things which the common owner has used for the benefit of, and which are appurtenant to, the thing which is granted, during the time it was in his possession. Or, in other words, upon the grant by the owner of part of his property, as it is then being used and enjoyed, there will pass to the grantee all those continuous and apparent *quasi* easements which are necessary to the reasonable use and enjoyment of the property granted, and which have been and are at the time of the grant being used by the owner of the entirety for the benefit of the part granted. *Janes v. Jenkins,* 34 Md. 1; *Mitchell v. Seipel, supra.* In 14 *Cyc.* 1166 the rule of the common law upon this subject is stated to be: "That where the owner of two heritages, or of one heritage consisting of several parts, has arranged and adapted these so that one derives a benefit or advantage from the other of a continuous and obvious character, and he sells one of them without making mention of those incidental advantages or burdens of one in respect of the other, there is in the silence of the parties an implied understanding and agreement that these

advantages and burdens respectively shall continue as before the separation of the title."

In *Janes v. Jenkins, supra,* this Court, speaking through Judge Alvey, said: "Whenever, therefore, an owner has created and annexed peculiar qualities and incidents to different parts of his estate (and it matters not whether it be done by himself, or his tenant by his authority), so that one portion of his land becomes visibly dependent upon another for the supply or escape of· water, or the supply of light and air, or for means of access, or for beneficial use and occupation, and he grants the part to which such incidents are annexed, those incidents thus plainly attached to the part granted, and to which another part is made servient, will pass to the grantee, as accessorial to the beneficial use and enjoyment of the land." See also *Mitchell v. Seipel, supra; Burns v. Gallagher,* 62 Md. 462; *Eliason v. Groves,* 85 Md. 223.

It is also well settled that such *quasi* easements as pass by implication and ripen into easements for the benefit of the grantee of the dominant estate, must have been, and must be at the time of the conveyance, apparent and continuous. In *Tiffany on Real Property,* vol. 1, page 706, it is stated: "That an easement to be thus created by implied grant must be apparent, is conceded by all decisions; and it is apparent, it is said, for this purpose, if its existence is indicated by signs which must necessarily be seen, or which may be seen or known on a careful inspection by a person ordinarily conversant with the subject."

In other words, to be apparent, as used in this connection, requires ·that the *quasi* easement or use enjoyed by the dominant tenement and imposed as a burden upon the servient tenement, must be visible, or such as would come to the knowledge of a prospective purchaser of either the dominant or servient estate by such an examination of the premises as is ordinarily made by one desiring to purchase. In *Eliason v. Groves, supra,* this Court said: "Whilst courts should not be too ready to sustain grants by implication, yet

if at the time of the purchase of the property there are
visible and apparent easements and privileges annexed to it
which are necessary for its reasonable enjoyment, we must
assume that they were taken into consideration when the
price was agreed upon and that the use of them was paid
for. We are not unmindful of the fact that the owner of
two tenements may use each for the benefit of the other in
such manner as he would not be willing to continue if he
sold one of them, but if the use has been of such a character
as would induce the public to believe that it was attached to
the property and is to continue, it is but fair to a purchaser
that a change of the state of the premises be made before the
sale is consummated, or notice be given of the intended
change by a provision in the deed, if the vendor does not
intend to permit the former use of the premises to continue.
That would not be asking too much of the vendor."

In addition to being apparent, the *quasi* easement must
be continuous. In determining what constitutes a contin-
uous easement or *quasi* easement, there is a difference of
opinion as expressed in the decisions of the courts. In some
of these cases the courts hold that an easement is continuous
if no act of man is necessary to its continued exercise; cases
holding this view being reported in Mississippi, Rhode Is-
land and Michigan. The view adopted by other courts is,
that if there is a permanent adaptation of the two tenements
to the exercise of the easement, it is continuous. This view
is supported by decisions in the states of New Jersey, Indi-
ana and New York, and is in harmony with the decision of
this Court in the case of *Eliason v. Groves, supra.* These
principles being firmly established, not only by the weight
of authority elsewhere, but by our own decisions, the ques-
tion is of their applicability to the facts of the case now
being considered.

The easement or *quasi* easement contended for by the
appellee is the right to take water out of a spring by buckets.
In doing this, there would not necessarily be any marks or
indications left upon the servient tenement as to the exer-

cise of the easement; and the easement or *quasi* easement was not of such a character as would bring to the knowledge of the prospective purchaser of either the dominant or servient tenement, even after the most careful inspection, the existence of such *quasi* easement. We, therefore, do not think that this case measures up to the requirements of the *quasi* easement being apparent. As to the question of its being continuous, we think this question is concluded by *Eliason v. Groves, supra,* in which the right to take water out of a well was held to be a continuous easement; and there can be no difference between the right to take water out of a well and the right to take it out of a spring. It is contended by the appellee that the last mentioned case is also authority for this *quasi* easement being apparent. But in this, as stated, we cannot agree. In that case there was a well on or near the division line between the dominant and servient lots, which were owned originally by the same party. There was also a gate or door through the fence which divided the two lots, directly at the well; and it was plainly apparent to anyone purchasing either of these lots that the well had been used, and was intended to be used, in common by both lots. There was also evidence in that case that this well in common was the only water supply for either house; while in the present case the evidence discloses that there was a well on the property of the appellee, and that the only reason water was taken from the spring was that the water from the well tasted of iron, due to its being pumped through an iron pump.

We now come to the third reason contended for by the appellee as to why the judgment of the lower court in granting a perpetual injunction should be affirmed. This contention is based upon the deed of November 16th, 1922. It is a plain and unequivocal grant by Thomas F. Nagle, the then owner of the six acre twenty-seven perch tract, to Jennie Nagle, the appellee, of a definite easement in and over the six acre twenty-seven perch tract; it gave her for a valuable consideration the definite and explicit right to lay a three-

quarter inch pipe from the spring over the grantor's land to
the grantee's milk-house, and the right to draw from the
spring by means of said pipe all the water which she needed
on her premises, with the further right of ingress and egress
over and upon the land of the grantor, for the purpose of
maintaining in proper condition the said pipe.   It is con-
tended by the appellant that because by a preamble in said
deed it was set forth that "Thomas F. Nagle intends to
grant unto a certain Jennie Nagle the right and privilege,"
etc., without the additional words, "his heirs and assigns,"
it only carries this easement to continue during the owner-
ship of Thomas F. Nagle of the servient tenement, or during
his lifetime, and that Thomas F. Nagle being now dead,
the easement so granted terminated and ceased at the time
of his death.   We cannot give our assent to this construction.
The deed of November 16th, 1922, in its preamble simply
states that Thomas F. Nagle intends to grant unto the ap-
pellee this easement.   This is a clear statement of what he
proposed to do by the deed, and is the natural and usual
language which would be employed to express this intention
in the event he proposed to grant the appellee a fee simple
interest.   In the body of the deed, succeeding the preamble,
the language used is clear and unambiguous, to the effect
that the grantor and his wife, for a valuable consideration,
grant, bargain and sell unto the appellee, her heirs and as-
signs, the easement in question.   The language employed
in this deed is in full conformity to the requirements of the
statute.   Section 9 of article 21 of the Code of 1924 pro-
vides: "All deeds conveying real estate which shall contain
the names of the grantor and grantee, or bargainor and bar-
gainee, a consideration in cases where consideration is neces-
sary to the validity of the deed, and a description of the
real estate sufficient to identify the same with reasonable cer-
tainty, and the interest or estate intended thereby to be con-
veyed, shall be sufficient if executed and acknowledged and
recorded as herein required."

Section 56 of the same article sets out a form of a deed

conveying a fee simple in real estate. Here we have a case of a deed setting out that Thomas F. Nagle and his wife are the grantors, stating a consideration, naming the appellee, Jennie Nagle, her heirs and assigns, as the grantee, and particularly describing the thing conveyed, to wit, an easement and right, use and privilege, to draw and use from said spring, for the purposes aforesaid, all water that she may need on her said property as aforesaid, with the right to said grantee, her heirs and assigns, of ingress and egress over and upon the lands of the grantor, for the purpose of keeping in repair the pipe as aforesaid. This deed was signed and sealed by the grantors, properly acknowledged and recorded, and it could convey nothing less to the appellee than the fee simple or absolute interest of the easement, right, or privilege therein particularly described.

It will be seen that the deed of the easement to Jennie Nagle is in proper form and conveys to her, her heirs and assigns, the right to take the water from the spring by means of a three-quarter inch pipe, but even though it is in proper form, it conveys nothing to the grantee except what the grantor owned and was entitled to convey. If A conveys to B, by deed, a fee simple title to Black Acre, when A does not own more than a life estate, nothing more than the life estate passes, even though the deed be sufficient in form to convey a fee simple, for the apparent and controlling reason that A could convey no more or greater interest than he possessed. The question, therefore, as to what interest Jennie Nagle took by the deed of November, 1922, or whether she took any interest at all under that deed, depends upon the question of whether Thomas Nagle had the legal right to dispose of and convey the easement which the deed purports to give. The appellant contends that Thomas Nagle had no right to dispose of the water directly from the spring, as attempted by the deed of easement to Jennie Nagle, because it was an invasion and in derogation of his riparian rights, which became fixed when he acquired the forty-seven acre tract by deed from Thomas Nagle in 1915. In deter-

mining the validity of this contention it is necessary to ascertain the rights of the appellant as a lower riparian owner.

These rights seem to be well settled, and while we might refer to learned authors and text writers on this subject, and the decisions of courts of other jurisdictions, it is unnecessary to do so, because nowhere do we find the principles governing such a case more concisely and at the same time comprehensively stated than was done by our predecessors in the case of *Baltimore v. Appold,* 42 Md. 442. In that case this Court, speaking through Judge Robinson, at page 456, said: "The right of every riparian owner to the enjoyment of a stream of running water in its natural state, in flow, quantity and quality, is too well established to require the citation of authorities. It is a right incident and appurtenant to the ownership of the land itself, and being a *common right,* it follows that every proprietor is bound so to use *the common right* as not to interfere with an *equally beneficial enjoyment of it by others.* This is the necessary result of the equality of right among all the proprietors of that which is common to all. As such owner, he has the right to insist that the stream shall continue to run *uti currere solebat,* that it shall continue to flow through his land in its usual quantity, at its natural place and at its usual height. Without a grant either express or implied, no proprietor has a right to obstruct, diminish or accelerate the impelling force of a stream of running water. Of course, we are not to be understood as meaning there can be no diminution or increase of the flow whatever, for that would be to deny any valuable use of it. There may be, and there must be allowed to all of that which is common, *a reasonable use,* and such a use, although it may, to some extent, diminish the quantity, or affect, in a measure, the flow of the stream, is perfectly consistent with the common right."

In other words, the right of a riparian owner entitles him to have the water of a stream flow down to his land as it is wont to flow, in its natural course and manner, unimpaired

in quality and undiminished in quantity, with the limitation that every other riparian owner above is entitled to the reasonable use of the water. This limitation must of necessity exist, for without it no riparian owner, other than he who owns the land surrounding the mouth of the stream, would have any right in the stream, which the law recognizes is the common right of all abutting land owners. *Gladfelter v. Walker,* 40 Md. 1; *Baltimore v. Warren Mfg. Co.,* 59 Md. 96; *Washington Water Co. v. Garver,* 91 Md. 398; *Aberdeen v. Bradford,* 94 Md. 670; 40 *Cyc.* 604; 27 *R. C. L.* 1091-1096, 1122-1128.

As to the limitation upon the general right of the riparian owner imposed by the reasonable use, it is stated in 27 *R. C. L.* 1093: "The general rule that a lower owner is entitled to the natural flow of a stream, if strictly construed and applied, would be too broad, for it would give the lower proprietor superior advantages over the upper, and in many cases give him in effect a monopoly of the stream, and it is accordingly uniformly held that the right of a riparian owner to the natural flow of the stream is not an absolute right to the flow of all the water in its natural state, but is subject to the right of the upper owners to make a reasonable use of such waters. The law does not require that there shall be no diminution, obstruction or detention whatever by the riparian proprietor, but on the contrary there may be a diminution in quantity or a retardation or acceleration of the natural flow, indispensable for the general and valuable use of the water, perfectly consistent with the existence of the common right. A diminution, retardation, or acceleration not positively and sensibly injurious by diminishing the value of the common right is implied in the right of using the stream."

In *Baltimore v. Appold, supra,* at page 457, it was said: "The limits which separate the *lawful* from the *unlawful use* of a stream, it may be difficult to define. It is, in fact, impossible to lay down a precise rule to cover all cases, and the question must be determined in each case, taking into

consideration the size of the stream, the velocity of the current, the nature of the banks, the character of the soil and a variety of other facts. It is entirely a *question of degree,* the true test being whether the use is of such a character as to affect materially the equally beneficial use of the stream by others."

The upper proprietor may divert so much water from the stream as he is reasonably entitled to for use upon his riparian lands, and this without being subjected to any liability. The test as stated by this Court in *Baltimore v. Appold, supra,* is the test applicable when the question arises between two riparian owners. In such a case the reasonableness of the use by the upper owner is tested by the question of whether or not his use results in denying an equally beneficial user to the lower owner, but that test is not applicable to the case now being considered, for the reason that this case is one between a riparian owner and a non-riparian owner; for while the land of Jennie Nagle abuts upon the stream flowing from the spring, she is not a riparian owner as respecting the rights of the appellant as to the flow of the water from the spring over his land. In other words, the simple fact that the appellee's land borders on the stream does not give her any right to divert the water at a point farther up the stream than the appellant's land. If we were considering a case arising between the owner of the land upon which the spring is located, and the appellant, the law would undoubtedly entitle the owner of the six acre twenty-seven perch tract to the reasonable use of the water in conjunction with that tract, but in considering the question of the reasonableness of the use, different factors intervene when determining that question as applied to land not riparian. It might well be that the use of the water flowing through a three-quarter inch pipe on the riparian land would be entirely reasonable, but it would not follow that the diversion of the same quantity of water to lands non-riparian would be a reasonable use. The natural rights as to the use of the water are restricted to a riparian proprietor,

and such a proprietor's right is only limited by the common right of other riparian owners to the beneficial use of the stream; and the test in such a case is that laid down in the case of *Baltimore v. Appold, supra.*

In *Tiffany on Real Property,* vol. 1, page 661, it is stated: "The natural rights as to the use of the water are restricted to a riparian proprietor, and consequently, while a grantee from him of land abutting on the stream will also have such rights, a grantee of a portion of his land not so abutting will have no such rights, nor can the riparian proprietor keep the land, and at the same time assign to another the water rights based on such proprietorship. On the same principle, a riparian proprietor cannot make use of the water for purposes not connected with his own land, as by supplying it for consumption to other persons not living thereon."

This statement of the learned author is supported by a number of decisions in England, California, New Jersey, Indiana, Kansas, New York and Massachusetts, and in our opinion is a sound statement of the law applicable. Therefore, Thomas F. Nagle, during his ownership of the six acre twenty-seven perch tract, had no authority to divert the water from the spring to other lands which were not riparian, because the use that he would thus be making of the water would not be a reasonable one, as it would not be incident to and used for the benefit of his own riparian land; and it follows that if he could not legally divert it himself, he could not legally grant to another permission so to do. We are of the opinion that the diversion of water by a permanent pipe line from the six acre twenty-seven perch tract to the six and one-half acre tract across the public road, which would result in lessening the natural flow over the appellant's land, would constitute an unreaonable use of the riparian right attached to the six acre twenty-seven perch tract, and could be restrained by the appellant. The appellant, now owning the six acre twenty-seven perch tract, in order to prevent this unreasonable use occasioned by the diversion to the Jennie Nagle tract, is entitled to prevent the diversion

by plugging the pipe in the spring, it being upon his own land; and such act, being legal, cannot properly be restrained by injunction applied for by the appellee.

At the time of the argument in this Court, there was filed a petition on behalf of the appellant setting forth that at the time of the trial of the case below in April, 1925, there was evidence offered by the appellee to show that the flow from the spring in question was not so diminished by the three-quarters inch pipe as to interfere with an abundant supply of water to the appellant on the lands owned by him; but that since the decision in the lower court, during the months of August, September and October, 1925, there was a very dry season, with the result that the said pipe drew the water from the spring to the extent of almost entirely depriving the appellant of the flow of that spring on his adjoining land, which he purchased in 1915, and also depriving him of a supply of water for the use of his milk-house and livestock on the land on which the spring is located. This petition is supported by the affidavits of several persons to the effect that the allegations of the petition are true. The appellee filed a motion that this Court not receive the said petition. We think the motion of the appellee in respect of this petition must be granted, for the reason that the appeal is from the decree of the lower court, which was based upon the evidence adduced at the trial, and the matter now sought to be presented by this petition was not passed upon by the lower court, and is, therefore, not open for consideration upon appeal to this Court. We have reached a conclusion favorable to the appellant without considering the matter contained in this petition, and, of course, the same conclusion would have been reached had it been permissible to receive the petition in this Court.

Entertaining the views as herein stated, we are of the opinion that the chancellor erred in granting the injunction, and that the decree must be reversed.

*Decree reversed, with costs to the appellant, and bill dismissed.*